Treadwell *v.* Reynolds.

## JOHN J. TREADWELL *vs.* ISAAC REYNOLDS.

The defendant, through a special agent, purchased a quantity of wool of the plaintiff, who was a total stranger to the defendant, and to whom his name and address were unknown. Three days after the delivery of the wool to the defendant, he notified his agent that he refused to accept it, but did not then or at any other time direct his agent to notify the plaintiff of such refusal, nor did he make any inquiry or use any means to ascertain the name or address of the plaintiff, or notify him through his agent or otherwise of his refusal to accept the wool, until six weeks after its delivery to him, when it had fallen in price two cents a pound. The defendant made no objection to the quantity or quality of the wool, but refused to accept it solely on account of the delay in its delivery.

Held, that the defendant had retained the wool, without notice to the plaintiff, an unreasonable time, which was equivalent to an acceptance, and that the plaintiff was entitled to recover the price for which it was sold.

ASSUMPSIT for wool sold and delivered ; appealed from the judgment of a justice of the peace to the Court of Common Pleas, and tried on the general issue closed to the court, before *Brewster*, J. The following facts were found by the court :

The plaintiff was a farmer, and resided at New Fairfield, in Fairfield county ; the defendant was engaged in the hat and wool business, and in buying and selling wool on commission, in New Milford, in Litchfield county, and there resided. Shortly before the 5th of July, 1865, the defendant authorized Charles Osborne, as his agent, to purchase for him the wool from a particular flock of sheep formerly owned by one Northrop. Osborne then informed the defendant that Mr. Treadwell, of New Fairfield, the plaintiff, had those sheep, but did not use the language that he was the owner of them. The defendant did not specify to Osborne any time in which he should get the wool. On or about the 5th of July, 1865, the defendant again met Osborne, and inquired of him if he had been over to see about that wool yet. Osborne replied that he had not. Defendant then authorized Osborne to pay forty-three cents per pound for the wool delivered to him at his place, and urged him to get it immediately, and Osborne agreed to go after it the first cloudy day, or day that he could not make hay. The defendant then furnished Osborne with sacks in which the wool was to be brought. Osborne went for the wool on the 19th of July, 1865, which was the first day after the 5th of July in which he " could not make hay."

Within a week or thereabouts after the 5th of July, the defendant, hearing nothing from Osborne concerning the wool, made his last shipment to New York, and closed the business, but did not communicate this fact either to Osborne or to the plaintiff. On the 19th of July, Osborne, without having seen the defendant since the 5th of July, or receiving any further instructions or directions, went to the residence of the plaintiff in New Fairfield, a distance of ten or twelve miles from the defendant, and purchased the wool, amounting to one hundred and fifteen pounds, from the plaintiff who was then the owner of it, for forty-three cents per pound, for the defendant, to be delivered to him, at his place

at New Milford, and then told the plaintiff that he supposed the defendant wanted it pretty soon, and left with him the sacks in which to carry the wool to the defendant. This was the first interview or communication that Osborne had had with the plaintiff concerning the wool.

On the next day the plaintiff took the wool in the sacks to the residence of the defendant. The defendant was then absent from home, and had left no instructions with any one, either to accept and receive or refuse the wool, and had not seen or heard from Osborne since the 5th of July. The plaintiff asked the servant and wife of the defendant what he should do with the wool, and both told him they knew nothing about it. He then informed the wife of the defendant that he had brought some wool there which the defendant had bought, and she told him she did not know what he could do with it unless he put it in the barn of the defendant on the place. The plaintiff thereupon put the wool in the barn.

The plaintiff was a total stranger to the defendant and to his wife and servant, and then told his name as Treadwell, but neither the wife nor servant recollected that he so told his name. The wool was from the flock formerly owned by Northrop, and no objection was ever made by the defendant to the quantity or quality of it, and no objection of any kind except as to the time of delivery. The wool was left in the barn about dark on the 20th of July, and on the 23d of July the defendant sent to Osborne a letter refusing to accept the wool, which letter was received by Osborne within a day or two afterward. A few days afterward the defendant met Osborne, and told him explicitly that he had not accepted and should not accept the wool, and that it was subject to his order. Osborne did not then, or at any of frequent interviews with the defendant for the space of six weeks after, again mention the name of the plaintiff in connection with the wool. The defendant gave no notice to the plaintiff, nor was the plaintiff informed from any source, that the defendant refused to accept or keep the wool, until about six or eight

weeks after it had been delivered, when the plaintiff was informed by Osborne that the defendant refused to take it. A few days thereafter Osborne introduced the plaintiff to the defendant, and the defendant then told the plaintiff that he refused to accept the wool, and notified him that it was subject to his order. The defendant has never used the wool, but has at all times held it subject to the order of Osborne or the plaintiff.

Osborne had no interest of any kind in the wool, and acted in the transaction only as the agent of the defendant, and not as the agent of the plaintiff. During the six weeks subsequent to the delivery of the wool to the defendant, wool had fallen in price two cents per pound.

On these facts the court rendered judgment for the plaintiff, and the defendant brought the record before this court by motion in error.

*Sanford,* for the plaintiff in error.

*Brewster* and *Tweedy,* with whom was *Averill,* for the defendant in error.

CARPENTER, J. That the defendant, on or about the 5th day of July, 1865, constituted Osborne his agent to purchase the wool in question, cannot be denied. It is equally clear that he was a special and not a general agent. Whether the agency continued until the 19th day of July, when the wool was purchased, and, if it did not, whether the plaintiff was bound to take notice of its limited and qualified nature, are questions which do not necessarily arise in the case. Those questions might have been important, had the defendant immediately, or within a reasonable time after the wool came into his possession, notified the plaintiff that he refused to accept the same. But we are satisfied that the defendant retained the goods, without notice to the plaintiff, an unreasonable time, and that that was equivalent to an acceptance, and is decisive of the case.

The wool was delivered on the defendant's premises on the

20th day of July. Three days afterward he wrote to his agent that he refused to accept the wool. A few days after that, he met him and repeated the notice verbally, and further informed him that the wool was subject to his order. Six or eight weeks after the delivery of the wool, the plaintiff, for the first time, was notified by Osborne that the defendant refused to accept it; and a few days afterward the parties met, and the defendant notified the plaintiff of his refusal to accept, and that the wool was subject to his order. In the meantime the wool had depreciated in value two cents per pound.

No reason is given, or suggested even, in the finding, why the defendant did not at once, instead of waiting three days, notify Osborne that he should not accept the wool, and request him to inform the plaintiff. · The letter sent does not appear to have contained any request that he, Osborne, should notify the vendor, nor any inquiry as to his name and address; and when the defendant and Osborne met a few days afterward, nothing was said by either party in respect to the name and residence of the plaintiff. Nor does it appear that the defendant used any diligence whatever to ascertain who delivered the wool, and to notify him that it was not accepted.

It is to be observed that the defendant made no objection to the quantity or quality of the wool, and therefore no time was required for examination; but his refusal to accept was solely for the reason that it was not purchased and delivered within the time authorized, nor till after he had closed the business for the season. It was his duty therefore to give notice immediately. Had he known the name and residence of the plaintiff, in the absence of any special circumstances requiring or justifying delay, it would not be unreasonable to require him to write as early as the day after the wool was received. A delay of three days, unexplained, would have been unreasonable.

Ignorance of the plaintiff's name cannot excuse the delay. He had the means of knowing. He knew his agent, and his agent knew the plaintiff. A letter through his agent would in a short time have reached the plaintiff. Moreover it ap-

pears that the defendant, on or about the 5th day of July, was informed that Mr. Treadwell, of New Fairfield, the plaintiff, had in his possession the sheep, the wool from which he desired to purchase. The parties lived only ten or twelve miles from each other, and it is quite probable that an inquiry of some of his neighbors would have given him at once the necessary information. But all these means and facilities for knowing the plaintiff, and communicating with him, were entirely neglected. So far was he from using due diligence, that he used no diligence whatever. The result was that the plaintiff was permitted to remain in ignorance of the real facts, and to suppose that his wool was sold, for a period of more than six weeks. It surely can require no argument to show that he must sustain an injury, without fault or negligence on his part, if this defence is successful.

The notice to Osborne cannot be regarded as notice to the plaintiff. Osborne was in no sense the plaintiff's agent. He was not bound to notify the plaintiff, and the defendant had no reasonable grounds for supposing that he would do so, especially as there was no request to that effect.

We think therefore that the Superior Court decided correctly, in holding, upon these facts, that the delay to give notice was unreasonable, and equivalent to an acceptance by the defendant, and therefore that he is liable in this action.

There is no error in the judgment.

In this opinion the other judges concurred.