THE C. AND C. ELECTRIC MOTOR COMPANY *vs.* THE D. FRISBIE AND COMPANY.

Third Judicial District, New Haven, January Term, 1895. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

Where the issue before the trial court was a mixed issue of law and fact, and certain claims of law were made, based on facts claimed to have been proven, a statement in the finding that " the court overruled said claims " of law, does not necessarily involve a ruling that the propositions of law were unsound. It is not necessary for a trial court hearing and determining mixed issues of fact and law, to pass upon all claims of law made by counsel, and indicate which are unsound, which are inapplicable, and which have exhausted themselves in leading the court to its conclusions. In either case, provided they do not have the effect sought by the party making them, they may properly be said to be overruled.

It is not error for a trial court to admit testimony of the declarations of an alleged agent, stating that the testimony will be treated as of no importance unless the agency is shown. Such discretion as to the order of evidence is not subject to review.

It is not error to permit a witness in reply to a proper question to testify that goods were " sold to the plaintiff on an order given by H," though the questions whether the transaction constituted a sale, and whether the plaintiff was in legal effect the vendee, were questions of mixed law and fact in dispute in the case. No harm is done by permitting the witness to state the matter in the natural mode of speech, as it appears to him.

It was a disputed question in the case whether *H* was the general agent of the plaintiff, and subordinate to that, whether *H's* office in Boston was really the office of the plaintiff. A witness was asked whether the plaintiff had a Boston office. Upon objection the court told him to answer if he had personal knowledge of the fact, and he answered affirmatively. *Held* no error. The adequacy of his knowledge as to the fact could be tested by cross-examination. A letter from the plaintiff referring to *H's* office as " our office " is admissible upon the same question.

Evidence that a person, not a party, since deceased, related to plaintiff's agent a certain conversation as having taken place immediately before, between himself and defendant's agent, is not admissible as part of the *res gestæ;* nor to aid in the construction of a letter thereafter written by plaintiff's agent to defendant, in the language of which there is no ambiguity.

Plaintiff bought of defendant an elevator for the use of *S.* Defendant agreed to deliver it in November, 1891, but failed to do so till March,

1892. Defendant also guaranteed its satisfactory operation for one year. *S* ran the elevator four or five weeks without complaint. In May, 1892, he refused to pay for it because of a specific defect, which the defendant corrected. Several other defects were complained of and corrected. In November, 1892, after the elevator had been four or five months in operation, *S* had the elevator tested, and it was found to be imperfect. This test might have been made in April or May. In January, 1893, *S* returned it. There was no fraud on defendant's part, nor was there any contract for the return of the elevator on any account. Neither *S* nor the defendant ever expressly accepted the elevator, and *S* always refused to pay for it because it was unsatisfactory. *Held* that there was no error of law in the finding of the trial court that the elevator had been accepted. It was in the power of the court to find an acceptance as an inference from acts and transactions proven, though the party held to accept never intended to accept, nor did so in express words.

The guarantee of satisfactory operation for a year did not constitute such operation a condition precedent to the acceptance of the elevator, and passing of the title.

When the defendant was about to deliver the elevator in March, the plaintiff wrote him that damage had been done by the delay, which defendant must rebate from the price, that *S* would wish to test it, and that " we shall not expect to be called on to pay for it, until he has accepted and paid for it. With this understanding, the elevator can be put in." The defendant, assenting to make a proper rebate, but neither assenting nor dissenting to the condition of acceptance and payment by *S*, installed the elevator. *Held:*—

1. That the plaintiff had no right to add new conditions to the contract without the assent of the defendant.

2. That the installation of the elevator by defendant, without dissenting from the conditions prescribed by the plaintiff, did not estop the defendant from denying his acceptance of those conditions.

3. That if the minds of the parties failed to meet as to any modification of the contract, it remained in force as originally made.

[Argued January 16th—decided March 5th, 1895.]

ACTION to recover for merchandise, with a counterclaim upon the part of defendant, brought to the Superior Court in New Haven County and tried to the court, *George W. Wheeler, J.;* facts found and judgment rendered for the defendant to recover of the plaintiff $481.31 damages and its costs, and appeal by the plaintiff for alleged errors in the rulings of the court. *No error.*

The case is sufficiently stated in the opinion.

*Talcott H. Russell,* and *George D. Mumford* of New York, for the appellant (plaintiff).

I. It is apparent from the facts stated on the record that one of the principal questions involved was whether the transaction in regard to the elevator was a sale at all, and if so, whether it was a sale to the plaintiff, to Howard, or to Shattuck. The plaintiff contends that it was not a sale at all, but a mere consignment on approval, the sale only to take effect on approval and acceptance by Shattuck. This is a perfectly well known contract in law and in business. The trial court evidently confused the distinction between this transaction and a contract of sale. *Street* v. *Blay,* 2 Barn. & Ad., 456 ; *Lillywhite* v. *Devereux,* 15 M. & W., 285 ; *Heyworth* v. *Hutchinson,* L. R. 2 Q. B., 447 (1867) ; *Heilbut* v. *Hickson,* L. R. 7 C. P., 438, 449 (1872) ; *In re Green & Co.* v. *Balfour,* 63 L. T. Rep., 97 ; Chitty on Contracts, p. 504; Smith's Leading Cas., 6th Ed., Vol. II., p. 27 ; Blackburn on Sales, pp. 360, 361; Benjamin on Sales, 6th Ed., § 600; *Wright* v. *Barnes,* 14 Conn., 518 ; *Kellogg* v. *Denslow,* 14 id., 411, 421 ; *Merriman* v. *Chapman,* 32 id., 146 ; *Scranton* v. *Mechanics' Trading Co.,* 37 id., 133, 134; *Singerly* v. *Thayer,* 108 Pa. St., 291 ; *Comfort* v. *Kiersted,* 26 Barb., 472 ; *Brown* v. *Foster,* 108 N. Y., 392 (opinion of *Danforth, J.*) ; *Campbell Printing Co.* v. *Thorpe,* 36 Fed. Rep. 645, and cases cited; *Doane* v. *Dunham,* 65 Ill., 513.

II. The plaintiff and Shattuck were the judges under the terms of the contract whether the elevator was satisfactory and complied with the warranty.

In an executory contract for the sale of goods to be manufactured for the vendee, a warranty that they shall, when delivered, be "satisfactory" to the vendee, makes the buyer the sole judge and the sale absolutely conditional upon the latter's satisfaction. The only limitation is, that his decision that it is not satisfactory must be made in good faith, and not arbitrarily or from caprice. The article to be delivered must be to his fair satisfaction. If it is not, he has the right to reject it and rescind the sale. Benjamin on Sales, 6th Ed., § 12; *Zaleski* v. *Clark,* 44 Conn., 218; *Phelps & Bigelow* v.

*Whittaker*, 37 Mich., 72; *McCarren* v. *McNulty*, 7 Gray, 139; *Singerly* v. *Thayer*, 108 Penn. St., 291; *Gray* v. *R. R. Co.*, 11 Hun, 70; *Hoffman* v. *Gallagher*, 6 Daly, 42; *Andrews* v. *Belfield*, 2 C. B. N. S., 779; *Brown* v. *Foster*, 113 Mass., 136; *McClure* v. *Briggs*, 58 Vt., 82; *Gibson* v. *Cranage*, 39 Mich., 49; *Goodrich* v. *Van Nortwick*, 43 Ill., 45; *Hartman* v. *Blackburn*, 7 Pitt. Leg. Jour., 140; *Warden* v. *Whitish*, 77 Wis., 434; *Salsbury Mfg. Co.* v. *Chico*, 24 Fed. Rep., 893; *Seely* v. *Wells*, 130 Pa. St., 69.

III. Neither plaintiff nor Shattuck ever accepted the elevator. They not only gave notice to defendant within a reasonable time of their refusal to accept it under the contract, but they returned the elevator to defendant.

To constitute an acceptance in an executory contract there must be some unequivocal act on the part of the vendee with intent to take possession of the goods as owner. *Street* v. *Blay*, 2 Barn. & Ad., 456; *Lillywhite* v. *Devereux*, 15 M. & W., 285; *Hulbutt* v. *Hickson*, L. R. 7 C. P., 438; *Brown* v. *Foster*, 108 N. Y., 392; *Comfort* v. *Kiersted*, 26 Barb., 472; *Phelps & Bigelow* v. *Whittaker*, 37 Mich., 72.

In every executory contract for the sale of goods, the buyer has the right to reject them, if not as warranted, if he does this and notifies the vendor within a reasonable time. *Cash* v. *Giles*, 3 Carr & Payne, 408; *Hulbutt* v. *Hickson, supra; Kellogg* v. *Denslow, supra; Brown* v. *Foster, supra.*

In determining what is a reasonable time for rejecting goods, the conduct of the seller may be taken into consideration; as where he attempts to put them in proper condition, or as where by a misrepresentation he has induced the purchaser to prolong the trial. *Adam* v. *Richards*, 2 H. Bl. 573; *Phelps & Bigelow* v. *Whittaker*, 37 Mich., 72; *Brown* v. *Foster*, 108 N. Y., 390.

IV. The original contract between the parties was modified by Howard's letter of March 14th and defendant's letter of March 17th, and by the defendant's going ahead after receipt of said letter of March 14th, to install the elevator. The court erred in refusing so to rule. The letter of March 14th was an offer which became a complete and bind-

C. and C. Electric Motor Co. *v.* The D. Frisbie and Co.

ing contract upon the defendant upon his failing to dissent from the terms of the offer and his availing himself of plaintiff's waiver contained therein, and proceeding to deliver the elevator.    This was an acceptance of the contract by act.

The waiver of plaintiff's right to rescind the sale was a good consideration for the new contract.    *Llewellyn* v. *Llewellyn*, 3 Dow. & L. Pr. Cas., 318 ; *Converse* v. *Kellogg*, 7 Barb., 590 ; *Freeman* v. *Freeman*, 43 N. Y. 34.

V. The defendant, by proceeding to install the elevator after the receipt of plaintiff's letter of March 14th, is estopped from denying that it constituted the contract between them. The trial judge erred in refusing so to rule.    All the elements of an equitable estoppel were present.    Pomeroy's Eq. Jur., §§ 804, 805, *et seq.;* Stephen's Law of Ev., p. 124; *Brown* v. *Bowen*, 35 N. Y. 519.

The evidence shows that the defendant acted on the propositions contained in the letter of March 14th, and that all the subsequent correspondence and action of the parties down to November corresponds with that theory, and is, at any rate, adapted to create the impression in the mind of Howard that the terms contained in the letter of March 14th were accepted ; that on that supposition he waived his claim to refuse to accept the elevator, and that the defendant cannot now set up a different theory.

*William A. Wright,* for the appellee (defendant).

I. The dealings between the plaintiff and defendant as outlined in their respective accounts, covered a considerable period and embraced numerous transactions.    On the trial, however, the contention was limited to practically two items : first, those growing out of certain alterations and breakages, occurring after delivery and acceptance, on an electric hoist, made by defendant for plaintiff for use in a Montana mine ; and second, a passenger elevator sold by defendant to plaintiff and shipped to Lowell, Massachusetts.

The evidence shows that the breakage of the hoist occurred in installing it at the mine, and not through any defect for which the defendant could be held.    If we assume that trust-

worthy witnesses had established the fact that the breakage arose from any breach of an implied warranty by the defendant, the pleadings do not raise the question of the right to recovery upon that ground. *McAlpin* v. *Lee*, 12 Conn., 131 ; *Hitchcock et als.* v. *Hunt*, 28 id., 343 ; *Scranton* v. *Mechanics' Trading Co.*, 37 id., 131. No express warranty of the hoist was claimed, and no evidence whatever was offered by the plaintiff to show the difference in value of the hoist as warranted and as it proved to be.

II. As regards the transaction concerning the elevator, no claim of fraud was made and no agreement to return was claimed by the plaintiff. The only remedy open to the plaintiff for the breach of the warranty, if such breach occurred, was the difference in the value of the elevator as warranted and as it proved to be ; and for damages for delay in completion of contract, unless it appears that any claim to the latter was waived by the conduct of the parties. *Scranton* v. *Mechanics Trading Co.*, 37 Conn., 132 ; *Pacific Iron Co.* v. *Newhall*, 34 id., 75–77. No evidence was offered on either of these points by the plaintiff, nor was any claim made on the trial for recovery on these grounds. The plaintiff proceeded on the theory that it had the right to return the elevator, if not entirely satisfactory to it, regardless of lapse of time or of any agreement to that effect. After nine months' use thereof, an unsuccessful attempt was made to return it to defendant in January, 1893, and it has since that date been accumulating rust and storage charges in the hands of the freighters.

The most the plaintiff could claim was reasonable opportunity of testing the elevator. A refusal to make such a test for nine months would of itself constitute an acceptance of the elevator. *Kellogg* v. *Denslow*, 14 Conn., 423 ; *Merriam* v. *Chapman*, 32 id., 148 ; *Kellogg* v. *Druxow*, 14 id., 422 ; 21 Amer. & Eng. Ency of Law, pages 557–9 ; *Brown* v. *Foster*, 108 N. Y., 387 ; *Underwood* v. *Wolf*, 131 Ill., 425.

The retention and use of both the electric hoist and the elevator, as shown by the evidence, was an admission that the contract had been performed and was a waiver of any implied

warranty.   10 Amer. and Eng. Ency. of Law, page 108 ; *Reed* v. *Randall*, 86 Amer. Decisions, 305, and note ; *Clark* v. *Wright*, 5 Phila. R., 438 ;   2 Schouler on Personal Property, p. 333.

FENN, J.   The plaintiff is a manufacturer of electric motors, located in New York.   The defendant is a manufacturer of elevators and hoists, located in New Haven.   There had been business dealings between them for some years prior to this suit.   The defendant sold elevators and hoists to the plaintiff and purchased motors from it.

The plaintiff used for the commencement of this action the form of complaint denominated "the common counts." It then filed a bill of particulars embracing many items. The defendant's answer was a general denial.   To this was added a counterclaim alleging an indebtedness, at the time of the commencement of the action, from the plaintiff to the defendant, for goods, wares and merchandise, sold and delivered ; an itemized statement of which was appended as an exhibit.   To this the plaintiff replied by a denial.   A further reply was made which had reference solely to a single item in the defendant's statement ; namely, a charge of $1,200 for a direct passenger elevator, as follows :   "Par. 1.   Defendant at the time of selling said direct passenger elevator, mentioned in the bill of particulars, warranted it to be constructed in a thorough and workmanlike manner, and reasonably fit for the purpose for which it was constructed, that is, for a passenger elevator ; and agreed that said elevator should be satisfactory to one Shattuck, for whose use said elevator was constructed, and should be accepted by him ; that if not satisfactory or not accepted by said Shattuck, it should not be considered sold, and should not be paid for.   Said elevator was not satisfactory to Shattuck, and was not accepted by him.   Par. 2.   The direct passenger elevator, described in the defendant's bill of particulars, was worthless and of no value, by reason of the defective and unworkmanlike construction of the same by defendant, and by reason of such defective construction was not reasonably fit for the purpose for which

it was sold, to the damage of plaintiff $1,500. Par. 3. Plaintiff refused to accept said elevator, and returned the same to the defendant on or about the first day of April, A. D. 1892, and as soon as they had an opportunity to inspect the same." The case was tried to the court, which rendered a judgment for the defendant.

The only items of dispute in either bill of particulars arose from two transactions; the first relating to a mine hoist furnished by the defendant to the plaintiff, for use in a mine in Montana; the second to the direct passenger elevator. The hoist was shipped to the mine, and there broke. The items of dispute growing out of the transaction, were three charges in the plaintiff's bill aggregating $214.27, expended by the plaintiff in consequence of, and to repair, such breakage; and one charge in the defendant's bill of $208.03, expended by the defendant for the same purpose. It was found that all of these items were reasonable charges. Which should be allowed and which disallowed, depended upon the determination as to which party was responsible for the breakage. It was the claim of the plaintiff that the machine failed because it was not suitable for the work for which it was constructed, and which there was an implied warranty that it would do; that there were defects in the hoist which made it unfit to perform the operations for which the defendant knew it was procured.

The court found that the cause of the breakage was negligent handling of the hoist by the plaintiff's servants in setting it up, together with the carrying with it of a very much heavier load than the specifications called for; that it arose from the negligence of the plaintiff, and not from the breach of the implied warranty of the defendant. This finding, by proceedings duly taken, under chapter 174 of the Public Acts of 1893, we are asked to reverse. But we are unable to do so. *Styles* v. *Tyler*, 64 Conn., 461. Granting that we were at liberty to go as fully into the examination of the testimony, as well as of the numbered requests to incorporate facts, and the memorandum of decision, as the plaintiff claims, we fail to find the conclusions of the trial court, complained

of, to be " clearly against the weight of evidence." Since the finding made must stand, it disposes of this part of the case.

But concerning the elevator many difficult questions are presented. It was ordered of the defendant by a Mr. Howard. The first inquiry is whether he, or rather the copartnership called Howard Bros., composed of himself and brother, did at the time act for, and represent, the plaintiff in the transaction. The finding of the court on this point was: " I find that the Howard Bros. were in fact the agents of the plaintiff in the elevator purchase, and held themselves out as such with the knowledge and consent of the plaintiff; and the defendant, relying upon such holding out, parted with its elevator valued at $1,200." The facts from which this conclusion was drawn appear at considerable length in different parts of the record; in the finding, in the memorandum of decision, in correspondence marked as exhibits and referred to in the finding, and in the plaintiff's requests to find, marked " proven " or "partially proven " (which latter form does not comply with the statute, and is indefinite and improper). These facts are substantially as follows: At the time the negotiations were opened in reference to the elevator, in the latter part of August, 1891, H. A. Howard or Howard Bros., had their place of business in Boston. Under the terms of a contract dated April 12th, 1890, made with the plaintiff, Howard Bros. were the exclusive selling agents of the plaintiff in New England, and so continued up to March 1st, 1892. And thereafter, by written agreement, they became the managers of the plaintiff's business in New England. Under the arrangement in force to March 1st, 1892, neither Mr. Howard nor Howard Bros. had authority to bind the plaintiff for goods purchased. They possessed the sole right to sell the apparatus of the plaintiff in New England, and had no other connection, and no authority from the plaintiff to purchase goods or use its credit; and they never purchased any goods on behalf of the plaintiff, nor pledged its credit. So far as it appeared, the transaction in question is the only one in which it was ever claimed that

the plaintiff was liable for their acts, prior to said date of March 1st, 1892.

The defendant never knew of the arrangement between the plaintiff and Howard, or Howard Bros. Before the negotiations for the elevator began, the plaintiff referred the defendant, as early as May 7th, 1891, to "our New England office," namely, the office in charge of Howard Brothers. The sign over the Boston office of the Howard Bros. bore the plaintiff's name, and nothing else, from April 12th, 1890, to April 1st, 1892. The plaintiff knew this fact, and had, through its officers, often visited the said office, and never objected to such use. The defendant visited the Boston office shortly after May 7th, 1891, and many times thereafter, and six or seven times during the negotiations pending the contract for the elevator. Howard or Howard Bros. were in charge of the office from May 7th, 1891, to April 1st, 1892. From the beginning of the negotiations the correspondence between the defendant and the Boston office was all upon paper bearing either the heading, "C. & C. Electric Motor Co., Howard Bros., Managers," or the same heading used by the New York office of the plaintiff. The signatures of the many letters from the Boston office to the defendant, up to the time the elevator was first put in, were all by rubber stamp, with the name "C. & C. Electric Motor Co.," except one letter signed by Howard, dated March 14th, 1892, two weeks after the Howard Bros. became the managers of the plaintiff. After the elevator was installed, the correspondence between the Boston office and the defendant was sometimes signed by rubber stamp "C. & C. Electric Motor Co.," and sometimes "H. A. Howard"; and letters of defendant to the Boston office were addressed sometimes to C. & C. Electric Motor Co., and sometimes to Howard or Howard Bros. The plaintiff knew of such use of its name, and received letters from the Boston office during said period, signed by a rubber stamp with its name, and never objected to such use. The plaintiff, through its New York house, always referred to the Boston office as "our house" and "our New England office." The defendant adressed all of its

letters to the Boston office, to the C. & C. Electric Motor Co., up to the time the elevator was installed. The plaintiff knew of the contract for the elevator as soon as made, and when it was about to be installed; and sought and obtained information from the defendant regarding it, in order to notify " our house in Boston." Mr. Frisbie, representing the defendant, was frequently in the New York office pending the negotiations for the elevator, and thereafter; but the plaintiff never notified him of its relation with Howard or Howard Bros. The entry upon the defendant's books was against the C. & C. Electric Motor Co., and was made one week after the elevator was put in. Neither Howard nor Howard Bros. ever notified the defendant of their relations with the plaintiff, nor stated to the defendant that they were not the agents or managers of the plaintiff in New England. The sale of the elevator was made by the defendant, as it believed, to the plaintiff, through Howard Bros., whom defendant believed to be the agent and manager of the plaintiff.

Upon this branch of the case it is the claim of the plaintiff, that the conclusion of the court that Howard Bros. were in fact agents of the plaintiff, in the elevator purchase, was without support in evidence; and therefore, under the decision in *Styles* v. *Tyler*, 64 Conn., 432, this court may correct the finding by erasing such conclusion therefrom. Conceding that it would be proper to do this provided it appeared to be unsupported by any evidence; conceding also, that the only facts which can be claimed to support it are those which have been recited, together with the additional one which also appears in the record, and is indeed urged by the plaintiff in explanation of its conduct, that the plaintiff had a direct interest in the matter because it was to sell the motor for use in connection with the elevator, and therefore was pecuniarily interested in the success of the compound machine—we cannot agree that there is no evidence to support the finding of actual agency in connection with this transaction. It is true, the evidence was not positive; but it is also true that it is not essential that it should be. It is famil-

iar law that "it is the right, and sometimes the duty, of the trier to infer what a man has actually done from his conduct, beyond the positive testimony in a case." *Union Bank* v. *Middlebrook*, 33 Conn., 100 ; *Dubuque* v. *Coman*, 64 id., 479 ; *Bunnell* v. *Berlin Iron Bridge Co. et al.*, 66 id., 24. "Such inference is one of fact, and cannot present a question of law ; at least where, as in this case, the inference is one which cannot be said to be palpably wrong." *Bunnell* v. *Berlin Iron Bridge Co. et al.*, *supra*. Regarding it as a fact, every reasonable presumption is to be made in support of the finding. *Dubuque* v. *Coman*, *supra*.

But even if this were erased, the further finding would remain that Howard Bros. held themselves out as agents of the plaintiff in the elevator purchase, with the knowledge and consent of the plaintiff, and that the defendant relying upon such holding out, parted with its elevator. This, the plaintiff insists, is a mixed question of law and fact upon the evidence brought up in the record ; that the question of implied agency, presented in this case, depends upon certain acts of the plaintiff, and upon certain duties of the defend-. ant with reference to those acts. As embodying the principles of law which were relevant, the plaintiff claimed and asked the trial court to rule as follows : " 21. That a general authority to an agent to make sales does not carry with it any implied authority to make independent purchases on behalf of the principal, not necessarily incidental to such sales, and that the principal is not bound by such purchases. 22. That the person dealing with an agent must act with ordinary prudence and reasonable diligence ; and if there is anything unusual in the transaction, likely to put a reasonable man on his guard as to the authority of the agent, he may not shut his eyes to the true state of the case, but it is his duty to inquire whether the contract about to be consummated comes within the province of the agency, and will or will not bind the principal. 23. That if the plaintiff never held out Howard to the defendant as its general agent to make purchases on its behalf, but simply recognized him, and allowed him to hold himself out as its sales-agent, and Howard

C. and C. Electric Motor Co. *v.* The D. Frisbie and Co.

had never stated to defendant that he was authorized to make such purchases, and had only made sales to the defendant, and had never made any purchases from defendant as the agent of the plaintiff prior to the purchase of the elevator by him, that the latter transaction, both from the fact that it was the first purchase made, and from the amount involved and the credit given, was of sufficiently unusual a character to put the defendant on its guard and impose upon it the duty of inquiring into Howard's authority to make the purchase."

The finding, after reciting all the claims made, eighteen in number, says : "But the court overruled said claims and rendered judgment, as on file." The argument is, that since the court did not say that these principles of law were inapplicable to the facts, but overruled them, it held in effect that they were unsound claims; that they are claims of pure law, are overruled, and unless indeed unsound or so wholly abstract that a mistake in regard to them on the part of the court could not have affected its judgment as to whether or not there was a holding out, the court erred.

But it seems to us that it ought not to be held necessary for a trial court hearing and determining issues of fact, to pass upon all the claims of law made by counsel; to sort them out; to decide which are unsound, which inapplicable; and which are both correct and applicable so far as rules governing the court in reaching its decision, but exhausting themselves, the same as the evidence on which they are based, when that decision is reached. In either case, provided they do not have the effect sought by the party making them, whether because deemed incorrect, inapplicable, or insufficient, they may alike properly be said to be overruled. Upon appeal, what claims were made in the court below will appear; and if proper subjects for review, such claims will be there considered. But in the absence of any contrary indication in the record, the presumption ought to be that the court in drawing its conclusion of "mixed law and fact," was guided by correct principles in reference to that portion of the compound which is regarded as fact. We think the conclusion of the court below, upon the question of the liability of the

plaintiff for the acts of Howard in reference to the elevator,. must stand.

There remains, however, to be considered upon this branch of the case, certain rulings regarding evidence, which were duly excepted to. The record states: "The defendant offered the testimony of Mr. Frisbie, president of the defendant company, as to his conversation with Mr. Howard while negotiating for the elevator. The witness Frisbie answered the question at some length. The plaintiff thereupon objected because no connection of Howard as the agent of the plaintiff had been shown. The court overruled the objection because coming too late, viz: after the question had been answered. Thereupon the plaintiff moved to strike out the answer, which motion the court denied. The answer had been relevant to the question propounded. Some evidence had been offered, as it was claimed, tending to prove the agency, and the court had already stated, as it did subsequently, that if the connection was not shown, the evidence was of no importance in the case."

No error can be found in this ruling. The evidence was not offered nor received as tending to prove agency. If agency was otherwise proved, then and then only was it important. Its relevancy was expressly made to depend on such proof. The order in which evidence of such dependent character shall be admitted, is most wisely and by well established rule left to the sound discretion of the trial court. *Stirling* v. *Buckingham*, 46 Conn., 461. Such discretion is not subject to review. *Dubuque* v. *Coman, supra*. The record further states: "Defendant offered the testimony of one Frisbie as follows: Q. You charged on your bill of particulars the C. & C. Electric Motor Company with an electric passenger elevator, $1,200. What have you to say in regard to that charge? A. The bill was made for an elevator that was sold to the C. & C. Electric Motor Company, on an order given to us by Mr. Howard, their Boston manager, to be shipped to Lowell." This answer was objected to, the words " Boston manager " struck out, and the rest of the answer allowed to stand. This ruling was correct. Doubtless, whether the

transaction constituted a sale, involved questions of law for the court, and not for the witness to decide. So also, whether if a sale, the elevator was sold to the C. & C. Electric Motor Company. But there was, and could have been, no danger that the court would be affected in its determination of these questions by the conclusions of the witness as expressed in the statement. The grounds on which the court held the plaintiff liable for the acts of Mr. Howard have already been stated. Those on which it held the transaction to be a sale will subsequently appear. No possible harm came to the plaintiff by permitting the defendant's witness to answer a relevant question, in ordinary language, and in a natural way, by stating the matter as it appeared to him. It would have been no better than an idle waste of time to have required the witness to alter his language, so as by circumlocution to avoid the statement of the inferences which existed in his mind, which any language would probably equally have indicated.

The defendant further offered the testimony of said Frisbie as follows: " Q. You may state whether or not the C. & C. Motor Company had an office in Boston that you know? Objected to. The Court. If you know of your personal knowledge of that fact, Mr. Frisbie, you can answer the question. Witness. Yes sir, they have a Boston office. To this question objection was made, the objection was overruled, and the question admitted."

Whether the plaintiff had, in fact, a Boston office, was certainly pretty largely a question of fact. It is one which the record, taken as a whole, discloses that the witness was quite competent to answer. But the admissibility of the question depended solely upon whether it was a proper inquiry to be made at all. If so, the witness being expressly cautioned not to reply unless that fact was one within his personal knowledge, was correctly heard. The right of cross-examination then afforded the plaintiff ample means of testing the adequacy of such knowledge upon the subject.

The defendant offered a letter from the plaintiff, dated May 7th, 1891, to which the plaintiff objected as not tending

to prove any authority from the plaintiff to Howard, to order the elevator in question. The court overruled the objection, and admitted the letter, which was as follows : " Referring to your visit to our office to-day to make inquiries with regard to prices and discounts on motors to be used in New Haven, we will ask you to write for information to our New England office, No. 32, Oliver st., Boston. The Boston office has charge of these matters in New England, and are the proper parties to whom to make application."

If this letter, as the plaintiff insists, "simply referred to the sale of motors," it at least tends to throw some light upon what the next preceding objection indicates to have been a disputed question, that is whether the plaintiff had a Boston office. We agree with the court below in thinking it admissible.

The plaintiff offered the testimony of H. A. Howard of Boston, the surviving member of the firm of Howard Bros. as follows : " Q. What was said to you by the Frisbie Company, or by Mr. Frisbie, in reference to the terms of payment for this elevator? A. The principal part of that, I think, was talked over between Mr. Frisbie and my brother. Q. Is your brother living? A. My brother is not living, no sir." The plaintiff thereupon offered to prove the declarations made by the deceased brother to the witness immediately after the conversation between said Howard, the deceased, and Frisbie, as to the conversation between them in regard to the terms of payment for the elevator. This was objected to by the defendant and excluded. Such exclusion was proper. The evidence offered was not admissible as part of the res gestæ. Rockwell v. Taylor, 41 Conn., 59, and cases cited. Indeed, the plaintiff refers to no case, and we doubt if any exists anywhere, in the infinite range of discussion of this subject, which gives color to the claim that the statement made by a person, not a party, as to what conversation took place between him and another person, not then present, at a previous interview could ever, under any circumstances whatever, be admissible on this ground.

But it is urged, that " if not evidence to prove the fact as

to what took place at the interview in question, it is relevant as being one of the circumstances and conditions under which Mr. Howard wrote the letters in evidence ;" that these letters "must be construed to some extent at least in connection with his knowledge in regard to the negotiations already pending." Certainly the evidence was claimed for no such purpose in the court below. But if it had been, there is nothing in the language of the correspondence itself to indicate the necessity of a construction of any part of it to which this extrinsic information would be germane.

The elevator transaction as found by the court below was substantially as follows : —

In the latter part of August, 1891, Howard Bros., or, as the court has found, the plaintiff through them, as its agents, opened negotiations with the defendant, relative to the placing, by the defendant, of a passenger elevator in the building of one Shattuck of Lowell, Mass., who was a customer of said Howard Bros., in connection with a motor of the plaintiff's manufacture. On September 2d, 1891, the plaintiff wrote the defendant, inclosing the *data* for estimating upon the elevator. Shortly after this Mr. Frisbie, president of the defendant company, went to Lowell with Mr. Howard, and as a result of this visit, Mr. Shattuck gave Mr. Howard an order for an elevator. Thereupon Howard contracted with the defendant to put in the elevator, in connection with a motor of plaintiff's manufacture, and according to the details submitted partly in writing, and in part orally, to Mr. Shattuck and Mr. Howard by Mr. Frisbie, and to install the motor and elevator, for the consideration of $1,200. The defendant accepted the contract above set forth, and gave Howard Bros. a guaranty that the elevator should be a satisfactory working machine for one year. No written specifications or plans for the elevator were made. The elevator was to have been completed and put in in November, 1891, but, owing to the defendant, the elevator was not put in until the latter part of March, 1892. This delay was caused wholly by the defendant, and was the occasion of causing Howard to doubt whether Shattuck would accept the elevator. Under the

circumstances the plaintiff would have been justified in refusing to accept the elevator and canceling the contract for the same.    On March 14th, 1892, in response to a telegram from the defendant saying, "To avoid further delay we send machine and man to-night; rebate can be satisfactorily arranged later."    Mr. Howard wrote to the defendant as follows:  "We have written to Mr. Shattuck, and if he is willing the elevator can probably be put in without further delay. We know of one tenant who has not paid any rent on account of not having the elevator, and his rent amounts to $100 per month, since Dec. 1st, 1891.    Mr. Shattuck will probably expect this to be made good.    If you put the elevator in, and it works satisfactorily, Mr. Shattuck will probably accept and pay for it, if he is satisfied with the rebate. He will probably want time to test it, however, and we shall not expect to be called on to pay for it until he has accepted and paid for it.    With this understanding, if you think best the elevator can be put in, and we trust will prove a complete success.    We shall be very glad when the matter is settled."    The defendant, on March 17th, 1892, replied to this letter, saying:  "We shipped the machine to Lowell last Monday, and our man went on Tuesday, and says that he found Mr. Shattuck quite pleasant.    He started right in to unpack car, and we shall expect to have him happy in a few days now.    Our Mr. Frisbie will probably go on when they are ready to start up.    We do not anticipate any trouble in reaching a satisfactory basis of settlement with Mr. Shattuck. Of course the party you refer to as not having paid his rent, which is $100.00 per month, since December 1st, is no doubt entitled to some rebate because he has not had the use of elevator; but it is ridiculous for him to hold back the whole amount, and we believe Mr. Shattuck to be too fair a man not to see it."    The defendant, further, in subsequent statements, agreed to make rebate of any damage to the plaintiff from the delay in putting in the elevator.    Neither the plaintiff nor Howard ever canceled, or attempted to cancel, the original contract, because of the defendant's failure to complete it in time.    The defendant at no time ever accepted the

conditions imposed in the letter of March 14th, 1892, nor was the original contract at any time changed.    The plaintiff never renewed the claim made in said letter of March 14th, 1892.    The elevator was run for a month or five weeks without complaint by Shattuck to Howard or to the defendant. The latter part of May, Shattuck refused to pay for the elevator, because the freight car did not come up even with the top floor.    Howard notified the defendant and it sent its mechanic, a Mr. Storer, to repair it.    Shattuck thought the man did not understand his business, refused to allow him to make the repairs, and sent him away.    The elevator then remained unused, and neither Shattuck nor Howard made any effort to have the same repaired until late in August, when Mr. Frisbie came up and fixed the defect Shattuck had complained of.    Several other trifling defects, at times, were noticed.    On November 10th, 1892, Howard demanded a settlement with Shattuck; he refused to accept until a test had been made.    The test was then made, and the clutches failed to hold the elevator.    On December 19th, 1892, the State inspector ordered the elevator closed, because of the defect in the safety device.    This could have been easily remedied.    Neither Shattuck nor Howard, after condemnation, requested the defendant to repair the machine.    On each occasion when Frisbie repaired the elevator, he left it in working order.    From the time the elevator was put in by the defendant, about March 25th, 1892, down to November 1st, 1892, the defendant repaired the elevator five or six times, and it did this in order to have Shattuck make a satisfactory settlement with Howard, and in order to carry out its guaranty with Howard.    The elevator could have been tested and examined in April and May, and its defects discovered.    The first test of the machine made by Shattuck or the plaintiff, purposely to test it, was in November, 1892, nearly nine months after it had been put in, during four to five months of which time it had been in operation.    On November 26th, 1892, the plaintiff wrote the defendant : " Mr. Shattuck has sent word that he is not satisfied with the elevator, and will not accept it.    He has had an inspector look

at it, who says that it cannot be passed.    Mr. Shattuck says he is going to have some other elevator put in." In January, 1893, the plaintiff took the elevator out and shipped it to the defendant.    There was no fraud in the sale of the elevator, and the contract of sale of elevator did not permit it to be returned on any account.    The defendant refused to accept the elevator so returned to it.    The elevator did not operate during the time it was in Shattuck's building in accordance with the guaranty or warranty of the defendant.

The court further found, in these words : " The plaintiff was entitled to a fair opportunity to reasonably test this elevator before acceptance, and within such reasonable time the plaintiff did not refuse to accept the elevator. * * * I find that the plaintiff through its agents Howard Bros. accepted said elevator, and that Shattuck, the customer of said plaintiff, accepted said elevator.    The plaintiff through its agents Howard Bros. was negligent in not pressing Shattuck for payment and compelling him to expressly accept or reject the elevator, and in permitting him to return the same.    The plaintiff's only remedy upon the facts found was for breach of warranty, and damages for delay in completing contract, and loss consequent thereto.    No evidence was offered of the difference in value between the elevator as warranted, and the elevator as it proved to be, nor of any loss or damage resulting from the delay in completing the contract in the time agreed, nor was any claim made in the trial of the cause for recovery on such grounds."

The claims of law made by the plaintiff in the court below, in reference to this transaction, were these, in substance : *first*, that the letter of March 14th, 1892, with the answer thereto of March 17th, 1892, hereinbefore recited, constituted the contract between the parties as to the terms and conditions of payment; *second*, that the facts found estopped the defendant from claiming the plaintiff to be responsible ; *third*, that under the circumstances the acts of Shattuck and Howard did not amount to an acceptance of the elevator.    We will consider the last of these claims first.

The case of *Scranton* v. *Mechanics' Trading Co.*, 37 Conn.,

130, was an action of assumpsit on a bank check given to the plaintiff by the defendants, for forty-seven barrels of potatoes and four barrels of onions, sold by the plaintiff to the defendants, and bought and received by them, after an examination and inspection to their satisfaction. The potatoes were sold on a warranty of their soundness and quality by the plaintiff, which warranty was broken ; but there was no fraud on the part of the plaintiff, and no agreement that the goods might be returned in case the warranty proved untrue. The goods were delivered in warm weather, and on the day after the purchase were found to be of inferior quality, and decaying. The defendants thereupon notified the plaintiff of their condition, and that they should not receive them, and offered to return them, which offer the plaintiff declined. This court held that the defendants could not, on account of a breach of warranty, rescind the contract and return the goods, in the absence of any agreement to that effect; that the defendants could only recover for warranty broken, the rule of damages being the difference in value between the goods as warranted and as they proved to be. The case cited differs from the case before us in some particulars, and, beginning with the assumption that the case was correctly decided—concerning which we entertain no doubt—and that it declares the settled law of this State, let us first inquire wherein those differences lie, and what should be their effect. This court, in the opinion, cites the language used in the earlier and well considered case of *Kellogg* v. *Denslow*, 14 Conn., 411, that the condition that the vendee may return the property in a certain event is implied in the case of executory contracts, as when an article is ordered from a manufacturer who contracts that it shall be fit for a certain purpose, and the article sent as such is never completely accepted by the party ordering it, and adds, " the judge seems to make a distinction between executory and executed contracts in this regard." After further citing CHIEF JUSTICE HINMAN, in *Merriman* v. *Chapman*, 32 Conn., 146, which contains a remarkably lucid statement of principles applicable in the case of a sale by sample, the court adds : " Here again the

same distinction seems to be made which is expressly made in the cases cited from the modern English law, and the decisions of our sister States, that if the contract of sale is executory there is an implied agreement that the property may be returned if it does not conform to the sample which is the basis of the contract, or the order made upon the manufacturer or seller of the goods. But if the sale is executed, and free from fraud,—if the property is accepted under the contract, which was made in good faith, no such implication exists. * * * The distinction between an executory and executed contract of sale in this respect is manifest. In the one case the property is accepted under the contract, and in the other it is not. In the case under consideration the defendants had an ample opportunity to inspect the goods and satisfy themselves whether they conformed to the warranty. They became satisfied on the subject after examining them to their full satisfaction, and they accepted and received them under the contract. Where goods are bought by sample or ordered from a manufacturer, no such opportunity for inspection exists before the property is received, and when received the vendee should have a reasonable opportunity for inspection and examination of it, before he should be required to accept it under the contract."

To the same effect is the language of LORD BLACKBURN, in his work on Sales, pp. 360, 361, cited by the plaintiff's counsel in their most admirable brief and supplemental brief, to which we are under very great obligations, as well as to the oral argument in their support, for assistance in the examination of the questions in this case. LORD BLACKBURN says : " If the contract was not a sale of an earmarked chattel and was an executory one, so that the property in the goods did not pass at the time of the contract, then the vendee may refuse to accept them when tendered if they are not such as the vendor warranted they should be. If he accepts them, then he cannot return them, but has his remedy in an action for damages. It may become a question whether the vendee has accepted the goods."

All this is most clearly expressed, and the meaning is

obvious. In order to constitute a completed sale there must be an acceptance of the goods sold. In case of what is called an executed sale the very fact that it is executed, involves the existence of opportunity for inspection before receipt by the vendee, and such opportunity existing, acceptance is inferred, from receipt, and under the contract. But in case of sale by sample, or of an article to be manufactured, no such opportunity exists at the time of the contract. When, therefore, the goods are tendered, the vendee may refuse to receive them if they are not such as warranted. And even when received, such receipt will not constitute acceptance, provided it does not afford a present reasonable opportunity for examination and inspection ; for until such opportunity the vendee is not to be held to have accepted. But after acceptance there is no longer any difference between an executed and executory sale, for the simple reason that there is no longer any executory sale. It has then become executed. The case before us was originally one of executory sale. This the trial court fully recognized, for it found that " the plaintiff was entitled to a fair opportunity to reasonably test this elevator before acceptance." The further statement in the finding, that " the contract of sale of the elevator did not permit it to be returned on any account," was manifestly intended to be construed in connection with such preceding finding, and not as contradictory thereof ; and therefore, as meaning that it embraced no express provision for such return. The ground of decision was that " within such reasonable time the plaintiff did not refuse to accept the elevator," and that in fact, both the plaintiff and Shattuck did accept it. The consideration of the case is therefore advanced, in the language above quoted from BLACKBURN, to the " question whether the vendee has accepted the goods." The court below held it had. Was such ruling erroneous?

Before proceeding to consider this question, however, it may be well to say that it seems of little importance, so far as the decision of the present case is concerned, what view may be adopted of the character of what has been termed an executory sale, during the time that it remains in the incom-

pleted state which causes it to be so denominated. If, as the plaintiff asserts, it is not a sale at all, but a consignment on approval, the sale only to take effect on approval and acceptance of the article, then when so approved and accepted it became a sale. Our present inquiry is not so much what it was, as whether the court below was correct in its conclusion as to what it became. For the same reason it is perhaps not necessary largely to inquire what force there is in the point made by the plaintiff, that " in an executory contract for the sale of goods to be manufactured for the vendee, a warranty that they shall, when delivered, be satisfactory to the vendee, makes the buyer the sole judge and the sale absolutely conditional upon the latter's satisfaction. The only limitation is, that his decision that it is not satisfactory, must be made in good faith, and not arbitrarily or from caprice. The article to be delivered must be to his fair satisfaction. If it is not, he has the right to reject it and rescind the sale." In support of this proposition *Zaleski* v. *Clark*, 44 Conn., 218, is cited ; also numerous cases in other jurisdictions. But this right, wherever it exists, is manifestly one to be exercised before acceptance, not after.

Whether the case before us is one for the proper application of this principle, need not be considered. If it is, the plaintiff has no occasion to avail itself of it, provided the elevator was not accepted ; and cannot invoke it if the elevator was accepted. Was it accepted ? The court found paragraph 64 of the plaintiff's requests to incorporate facts in the finding : " Shattuck never expressly accepted said elevator, nor did the Howard Bros., nor did the plaintiff," to be " proven partially " ; and paragraph 65 of said requests : " the acceptance, if there was such acceptance, must be inferred from the acts and transactions between the parties," to be " proven." There appears to have been no evidence of any express acceptance. On the contrary, paragraph 95 of plaintiff's requests : " said Shattuck always refused to pay for said elevator, on the ground that it was not satisfactory to him," was marked " proven." Nevertheless there is nothing necessarily inconsistent with this in the finding of the

court that both the plaintiff and Shattuck did accept it. It was in the power of the court to find acceptance as an inference from acts and transactions proven, *Dubuque v. Coman*, 64 Conn., 479, and such inference might be drawn and such acceptance exist, notwithstanding the party held to accept, himself refused to recognize that he had done so. *Brown v. Foster*, 108 N. Y., 390. Not only do actions sometimes speak more loudly than words : they also speak to a different purport and effect. It is true, as the plaintiff asserts, that there is no claim here for damages for refusal to accept ; that the question at issue is not whether the plaintiff rightfully or wrongfully refused, or whether under the circumstances a refusal or a failure to accept, would have been right or wrong. The court below thought that it would have been justifiable, but that it did not exist. The grounds upon which the court reached this conclusion appear in the finding : " The elevator was run for a month or five weeks, without complaint by Shattuck to Howard or to the defendant. The elevator could have been tested and examined in April and May, and its defects discovered. The first test of the machine made by Shattuck, or the plaintiff, purposely to test the machine, was in Nov., 1892, nearly nine months after it had been put in, and during four to five months of which time it had been in operation. The plaintiff through its agents Howard Bros. was negligent in not pressing Shattuck for payment and compelling him to expressly accept or reject the elevator, and in permitting him to return the same."

Now, while some of the authorities lay down the proposition that mere retention of property for a period of time does not constitute, that is, is not itself acceptance, they all agree that it is evidence which, if not satisfactorily explained so as to justify or excuse it, may warrant a conclusion that the property has been accepted ; or, as is sometimes said, may be a waiver of the right to rescind and return, and equivalent to acceptance.

In this case there was something more than mere retention. There was retention coupled with use, for a considerable time, without complaint. There was a further retention,

coupled with use, with complaint, and a considerable period of disuse and storage, all of which time amounted, in the aggregate, to about nine months. And so, the question comes to this, as the plaintiff asserts : " Was plaintiff's retention of the elevator in his building for nine months before finally rejecting it an unreasonable delay under the circumstances of this particular case ?" We mean that this was the question before the trial court. If the trial had been to the jury, that question would have been submitted to them. *Kellogg* v. *Denslow, supra,* 422 ; *Cohen* v. *Pemberton,* 53 Conn., 221. As it comes before us, it is not as broad as that, for we can only review the action of the Superior Court in passing upon this issue of fact, or jury question, to the extent of determining whether it reached a conclusion which the law does not warrant.

Such being the question before us, we will examine the claims of the plaintiff in regard to it. They are, first: " In examining what is a reasonable time for rejecting goods the conduct of the seller may be taken into consideration; as where he attempts to put them in a proper condition; or, as where, by a misrepresentation, he has induced the purchaser to prolong the trial." This claim is supported by the citation of authorities. But perhaps the best warrant for it is its own conformity to reason and justice. We unhesitatingly adopt it as correct. But there is nothing to lead us to think the court below did not do so also, and give to the consideration full weight. The finding states that in the latter part of May (after the machine, as is found, had been running four or five weeks without complaint, and could have been tested and examined), Shattuck refused to pay for it, on a specific ground, namely, that the freight car did not come up even with the top floor. Other trifling defects at times were noted, and the defendant repaired the elevator five or six times, on each occasion leaving it in working order, and doing this in order to have Shattuck make a satisfactory settlement with Howard, and to carry out its guaranty with him. No settlement was demanded by Howard from Shattuck until November, 1892, and then, for the first time, the

test which could have been made in April and May was required as a condition precedent to his acceptance. Under such circumstances we cannot say, as a matter of law, that there was such an explanation of the delay, by plaintiff and Shattuck, that the lapse of time fails to furnish evidence of acceptance by them of the elevator in question. It may be added that there is nothing in the record to indicate that any explanation or excuse was offered for the neglect to test and examine the elevator in April or May, by which its defects would have been discovered, or for its use without complaint for four or five weeks, during those months. That alone would have sustained the conclusion of the court below. *Treadwell* v. *Reynolds*, 39 Conn., 31; *Kellogg* v. *Denslow*, *supra.*

But again, it appears that "the defendant gave Howard Bros. a guarantee that the elevator should be a satisfactory working machine for one year." This, the plaintiff insists, was a condition of the sale, and gave the plaintiff, by its express terms a year in which to reject; that the refusal was in fact made within the year, on the ground that it did not comply with the warranty, as the court found to be the case. This claim was not indicated in the pleadings, not made in the court below, not embraced in the reasons of appeal, and manifestly, from the entire record, is a view which did not enter into the minds of the parties in the day and time of the transaction.

But besides this, it is evident that it is not of the nature of an express warranty as to the length of time an article, either in existence at the time of the contract, or thereafter to be made and delivered, shall continue to keep in order, or work satisfactorily or well, to be a condition precedent to the passing of title, or to the acceptance of such article. Such a warranty is not a condition at all. If it were, it would be a subsequent, not a precedent, one. The time stipulated in the warranty would not begin to run until the contract was complete—until the executory sale became executed by delivery, receipt, and acceptance. Cases similar to those cited by the plaintiff, where there is an express provision in the

contract that the goods are not to be paid for until a certain event happens or condition is performed, or where the period named is stipulated to be a time of trial, belong to a different class, and are subject to other rules.

We have thus far been considering the questions which arise from the original contract between the parties. But it is further claimed that such contract was modified by Howard's letter of March 14th, 1892, and defendant's letter of March 17th, 1892, and by the defendant's going ahead after receipt of said letter of March 14th, 1892, to install the elevator. The court below held that the original contract was never canceled or changed, and that the defendant at no time ever accepted the conditions imposed in the letter of March 14th, 1892. This is said to be error.

At the time the letter of March 14th was written, circumstances of delay on the part of the defendant, which were the occasion of causing Howard to doubt whether Shattuck would accept the elevator, would have justified the plaintiff itself in refusing to accept it, and in canceling the contract for the same. Under these circumstances, replying to a telegram from the defendant, that the elevator had been sent to Lowell, Howard said: "We have written to Mr. Shattuck, and if he is willing the elevator can probably be put in without further delay. We know of one tenant who has not paid any rent on account of not having the elevator, and his rent amounts to $100 per month, since Dec. 1st, 1891. Mr. Shattuck will probably expect this to be made good. If you put the elevator in, and it works satisfactorily, Mr. Shattuck will probably accept and pay for it, if he is satisfied with the rebate. He will probably want time to test it, however, and we shall not expect to be called upon to pay for it, until he has accepted and paid for it. With this understanding, if you think best the elevator can be put in, and we trust will prove a complete success."

Now let us see in what way this proposition, if accepted, can be said to have altered the preceding contract. As Mr. Shattuck was willing that the elevator should be put in, and the defendant agreed to make rebate, the portion of the let-

ter referring to these matters may be passed over. Passing next the statement of what Mr. Shattuck would probably do, including that he would probably want time to test it, all of which were his rights under the contract, which rights, or the contract as to him, it is not claimed were enlarged or altered by the letter, it adds : " We shall not expect to be called on to pay for it until he has accepted and paid for it. With this understanding, if you think best, the elevator can be put in." Now, as to the defendant's letter of March 17th, there is certainly nothing in it expressing any assent to this condition. If any is to be held to have been given, it is certainly on the ground which the plaintiff asserts—failure to dissent, and proceeding to install the elevator. But without anticipating the question of estoppel, to which we shall presently come, we think it would be a dangerous doctrine to hold that the effect of proceeding to install the elevator, after the receipt of the letter, is to be deemed an acceptance of any conditions which it sought to impose. The effect would be to give to parties situated as this plaintiff was, an undue advantage. For aught that appears, the defendant may in good faith have considered that it had the right to install the elevator under the contract, although the court below has held the fact to be otherwise. If the plaintiff had refused to permit the defendant to do so, and rescinded the contract, the defendant could have tested the question in a proper suit for the breach. But if the plaintiff, not refusing, can nevertheless, without the consent of the defendant, impose a condition materially altering the contract, under which contract so altered, and not the original one, if the defendant proceeds it must be held to have acted—then it would seem that it could neither sue for damages, by reason of the rescission of the original contract, since the plaintiff has waived the asserted right to make such rescission, or for compensation for its performance, since the imposed condition of such waiver, to which the defendant by proceeding is held to have assented, has altered such contract, and substituted, as it is asserted, a vitally different one in its place.

Neither do we think the court erred in refusing to rule

that the defendant, by proceeding to install the elevator while expressing no dissent from the conditions contained in the letter of March 14th, 1892, is estopped from denying that such letter constituted the contract between the parties, and that Shattuck never having accepted or paid for the elevator, the plaintiff was not responsible. We will adopt as applicable to this case the definition of equitable estoppel arising from acts purposely done to affect the person who invoked the estoppel, which the plaintiff quotes from Sir James Stephen. (Dig. of Evidence, Art. 102.) "When one person by anything which he does or says, or abstains from doing or saying, intentionally causes or permits another person to believe a thing to be true, and to act upon such belief otherwise than but for that belief he would have acted, neither the person first mentioned nor his representative in interest is allowed, in any suit or proceeding between himself and such person or his representative in interest, to deny the truth of that thing." But we cannot say that the defendant, by anything which it did or said, or abstained from doing or saying, had any intention or thought of inducing the plaintiff to believe it to be true that the defendant assented to the conditions, or to act on that belief otherwise than but for that belief the plaintiff would have acted. On the contrary, the language of the letter of March 17th, 1892, replying to that of March 14th,—beginning with a repetition of the information contained in the previous telegram that the machine was already shipped, adding that Mr. Shattuck had been "willing," that is, "quite pleasant," and had "started right in to unpack car, and we shall expect to have him happy in a few days now," and assenting to such rebate as might be required on account of delay,—was presumably intended as a full answer and compliance with the plaintiff's proposition, as it was understood by the defendant. If not understood by the plaintiff to be such, there would, we think, be equally good ground to claim that the plaintiff should have forthwith notified the defendant that it was not satisfactory, and that no modified assent to its imposed conditions would be acceptable ; but unless such conditions were fully agreed to, the

work then in progress must stop, and the contract be regarded as rescinded and at an end. There would be quite as much reason for holding the plaintiff estopped for failure to dissent to the defendant's letter, as the defendant for failing to do so to that of the plaintiff. More especially is this true, provided the construction to be placed on the plaintiff's proposed condition is as claimed: not merely that the plaintiff was not to be responsible until Shattuck had accepted, but, since it is found that Shattuck did accept, that it is not liable until Shattuck pays; although, as found by the court, the plaintiff "was negligent in not pressing Shattuck for payment and compelling him to expressly accept or reject the elevator, and in permitting him to return the same." We do not think the court committed an error in refusing to apply the principle of equitable estoppel, for the purpose of enabling a party thereby to enjoy the benefit of an implied contract, protecting itself from the results of its own laches and negligence, and authorizing it to take advantage of its own fault.

Another claim in this connection, made in the court below and presented by the reasons of appeal ought, perhaps, although not referred to in the briefs or in argument, to be noticed. The plaintiff claimed "that if Howard Brothers understood the contract in the manner stated in their letter of March 14th, and the defendant understood that there was a sale of the elevator to the C. & C. Electric Motor Company, there was no meeting of the minds of the parties, and therefore no contract." In the absence of explanation we are not sure whether the intended meaning is, if Howard Brothers understood the original contract to be what the letter states, or if they understood that a modification proposed by the letter was assented to, then there was no meeting of minds and no contract. If the former is intended, then the court has found what the contract was, and there is nothing to indicate that the plaintiff understood it differently. Indeed evidence to that effect would not have been admissible. *Hotchkiss* v. *Higgins*, 52 Conn., 205, 213. Besides, if there had, for the reason stated, been no express contract, the one which the law would have implied from the delivery of property to the

plaintiff's agents, and the acceptance, as found by the court, would have been its equivalent in effect. But if the plaintiff means that there was no modified contract, or contract to modify the former one, that, it seems to us, is precisely what the court has found; for a different reason, it is true, and of which finding the plaintiff complains.

We will only add that we have carefully examined all of the numerous authorities cited by the plaintiff's counsel, and discover nothing in them in conflict with the conclusions which we have reached upon the various questions in this case, except so far as doctrines in certain jurisdictions cited are in direct conflict with well established principles in our own. *Brown* v. *Foster*, 108 N. Y., 390, is in some respects very similar to the present case. But to the extent that it is in point, it appears to us to be a strong authority against the plaintiff, instead of in its favor.

There is no error in the judgment complained of.

In this opinion the other judges concurred.