JOHN D. DOYLE, administrator, *vs.* BOSTON AND ALBANY RAILROAD COMPANY.

Suffolk.    Nov. 9, 10, 1887. — Jan. 2, 1888.    DEVENS & W. ALLEN, JJ., absent.

At the trial of an action of tort, brought by an administrator, under the Pub. Sts. c. 112, § 213, against a railroad corporation, for the death of the plaintiff's intestate, caused by a collision between a locomotive engine of the defendant and a wagon in which the intestate was driving, at a place where the highway crossed the railroad at grade, there was evidence that between two and three o'clock in the morning the intestate delivered milk to a customer who lived a quarter of a mile from the crossing, and that he had another customer near the crossing on the farther side; that his wagon was more than half-way over the crossing, which was one hundred and sixty-eight feet wide, when the gateman cried, "Stop," and shut the gates; that the intestate whipped up his horse, the gateman told him to come on and opened the gate, and the wagon was struck by the locomotive engine, and the intestate instantly killed; and that no bell was rung or whistle sounded on the locomotive. *Held,* that the evidence would warrant an inference that the intestate was awake when approaching the crossing, and a finding that the neglect to ring the bell or sound the whistle contributed to the injury; and that the court could not rule, as matter of law, that the intestate was guilty of gross negligence.

HOLMES, J.    This is an action of tort, brought under the Pub. Sts. *c.* 112, § 213, by an administrator to recover for the death of his intestate.    It was admitted that the intestate was killed by a collision with the defendant's engine, upon a crossing of a highway at grade within § 163, and there was evidence that neither the bell upon the engine was rung nor the whistle sounded.    But the defendant denies that "it appears that such neglect contributed to the injury," as required by § 213, and argues that to allow the connection to be inferred from the

neglect and the accident alone is to make the clause of the statute nugatory.

The distance between the gates on each side of the crossing was one hundred and sixty-eight feet, and the accident happened more than half-way across. The defendant further argues, that the conduct of the deceased the moment before constituted gross negligence, which, by the terms of the statute, would prevent a recovery. But if the deceased was not guilty of such gross negligence as, by the terms of the statute, would prevent a recovery, then whether there was some neglect on his part, or on the part of the defendant's servant, or the conduct of both was not more ill-judged than might have been expected in the flurry of approaching danger, the intervention of these later causes would not necessarily prevent the neglect to give warning from "contributing" to the injury. *Elmer* v. *Locke*, 135 Mass. 575, 576, and cases cited. *Norton* v. *Eastern Railroad*, 113 Mass. 366. *Commonwealth* v. *Boston & Lowell Railroad*, 134 Mass. 211. The later conduct of the parties, therefore, may be laid out of the case, so far as the first question is concerned, and it may be assumed that, if there was evidence that the defendant's neglect contributed to bring the deceased to where he heard the shout of warning, there was evidence that it contributed to the injury.

Coming then to the defendant's argument which we have stated, we agree that the plaintiff must allege and prove that the neglect of the defendant contributed to the injury. *Wright* v. *Boston & Maine Railroad*, 129 Mass. 440, 444. But it is plain that we cannot expect, and the statute cannot have meant to require, direct evidence of the connection. The only absolutely direct proof possible would have to come from the lips of the person killed. Even if eyewitnesses were produced who saw him watching and listening as he approached, the connection would still be an inference. But a fact proved by a legitimate inference is proved no less than when it is directly sworn to. *Commonwealth* v. *Doherty*, 137 Mass. 245, 247. And the question what inferences are legitimate is not affected by the terms of the statute, but is to be answered in accordance with the general principles of law. To answer this question the court refers to its own knowledge of the ordinary course

of events so far as to consider whether it can say that there is no probability or presumption of fact that when facts A and B exist, of which there is direct evidence, fact C also exists by way of cause, effect, or concomitant. If it cannot, then it leaves it to the jury to say whether, according to their experience, there is such a probability or presumption. *Commonwealth* v. *Briant*, 142 Mass. 463, 464.

In this case we have a man driving a milk wagon between two and three o'clock in the morning. He was awake a quarter of a mile before reaching the crossing, as he then served a customer with milk. He knew where the crossing was, and he had to serve another customer a short distance on the other side of the crossing. Very plainly, we cannot say that there is no probability that the man was awake as he approached the crossing, or that the jury might not find that there was such a probability, and therefore infer that the deceased was awake. The warning, either by bell or whistle, if it had been sounded, would have been audible, and, as the deceased was not driving in a furious or reckless manner, the jury might infer that he would have heard it. People do not generally try to drive across railway tracks when they know by the bell or whistle that a train is approaching; the jury therefore might find that the deceased would have stopped if the bell had been rung or the whistle sounded.

We cannot say, as matter of law, that the intestate was guilty of gross negligence. The plaintiff's evidence tended to show that the intestate had got half-way across before there was any warning, and before the gates were shut, and that the first warning he received was when the gates were shut and the gateman shouted, " Stop," — a shout which he may have heard only as an alarming sound; that then, practically all at once, the deceased whipped his horse, the gateman shouted to him to come on, and opened again the gate in front of him. We do not say that this seems to us the most probable view of the facts, but it is one which the jury might have taken on the evidence. Going on under these circumstances was a mistake, but we cannot say it was gross negligence. Something must be allowed for the natural impulse which some people feel, when suddenly startled and alarmed, to leap forward, and more

for the natural tendency to follow the gateman's directions. It is not argued that there was gross negligence before the deceased whipped his horse. See *Copley* v. *New Haven & Northampton Co.* 136 Mass. 6. *Bayley* v. *Eastern Railroad*, 125 Mass. 62. *Commonwealth* v. *Fitchburg Railroad*, 10 Allen, 189, 191.

*Exceptions overruled.*

*S. Hoar* for the defendant.
*H. E. Swasey & G. R. Swasey*, for the plaintiff.