THE STATE OF CONNECTICUT vs. JOHN BOYLAN.

First Judicial District, Hartford, January Term, 1907.
BALDWIN, HAMERSLEY, HALL, PRENTICE and REED, Js.

A request to charge may well be refused which in effect asks the court to instruct the jury how they shall determine pertinent matters of fact.

General Statutes, § 4579, punishes every person who shall "keep for sale" any fluids for illuminating purposes which are inflammable at a less temperature than 110 degrees Fahrenheit. Upon a prosecution for a violation of this statute it was *held:*—

1. That ownership of the illuminating fluid by the person who might have it for sale was not an essential element of the offense; it was enough if he kept it for sale as the agent of another.

2. That inasmuch as the statute did not prescribe what instrument or method should be used in determining the point of inflammability, the law would require the use of such reasonably accessible instruments and methods as would most accurately ascertain that point; leaving the determination of what particular instrument or method was the most accurate and reliable, in case of a conflict upon that subject, to the decision of the jury.

It is within the discretion of the trial court to admit on rebuttal evidence which might have been introduced in chief.

This court will not undertake to say that the trial court erred in refusing to set aside a verdict as against the evidence, merely because the jury saw fit to accept the testimony of one witness in preference to the conflicting testimony of several others.

Argued January 3d—decided January 18th, 1907.

INFORMATION for keeping illuminating fluid for sale which was alleged to be inflammable below one hundred

and ten degrees Fahrenheit, brought to the City Court of Middletown and thence by a binding-over to the Superior Court in Middlesex County, and tried to the jury before *Case, J. ;* verdict and judgment of guilty, and appeal by the accused. *No error.*

*Charles E. Perkins* and *Thomas J. Spellacy*, for the appellant (the accused).

*Frank D. Haines*, State's Attorney, for the appellee (the State).

HALL, J. Section 4579 of the General Statutes provides that " every person who . . . shall keep for sale any fluids for illuminating purposes, inflammable at a less temperature than one hundred and ten degrees Fahrenheit, shall be fined not more than five hundred dollars, and imprisoned not more than three years."

The information alleges that on the 22d day of January, 1906, at the town of Middletown, the defendant did keep for sale a certain fluid for illuminating purposes which was inflammable at a less temperature than 110 degrees Fahrenheit.

The State offered evidence to prove these facts: On said 22d day of January, the accused, as he was accustomed to do, drove upon the streets of Middletown a so-called tank-wagon containing kerosene oil, which he offered for sale, and sold to several persons for illuminating purposes, and a can of which, containing about five gallons, drawn by him from said tank-wagon, he sold to one Inglis, chief of police of Middletown, and received payment from him therefor.

From January 22d to January 31st six tests were made of the oil so purchased by Inglis, for the purpose of determining its inflammability, by Professor Bradley, the regularly appointed oil inspector of the city and town of Middletown, and a chemist at Wesleyan University. Four of said tests were made with what is known as the Elliott or closed cup, and two with the Tagliabue or open cup, and

in each test were determined what is called the "flash point," namely, the temperature of the heated oil at which the vapor rising from it flashes momentarily into a perceptible flame, upon the application to it of fire, and then immediately goes out, and what is called the "fire point," namely, the temperature of the heated oil at which, upon the application to it of fire, combustion continues uninterruptedly until the oil is entirely consumed. In one of said two tests made with the Tagliabue or open cup the flash point was found to be 97 degrees F. and the fire point 119 degrees F., and in the other the flash point 96 degrees F. and the fire point 117 degrees F. In said four tests made by the Elliott or closed up, which the State claimed was the most reliable instrument for ascertaining both the flash and fire point, the flash point was found in the first three tests to be 85 degrees F., and in the last 84 degrees F., and the fire point, in the first and third, to be 106 degrees F., and in the second and fourth, respectively, 107 degrees F. and 108 degrees F.

The defendant claimed to have proved that the Standard Oil Company owned at Middletown a large storage tank containing many thousand gallons of kerosene; that the accused was employed by said company to draw off oil from this storage tank into a wagon-tank, furnish it to grocers and others, receive pay therefor, and send the pay to the company; that on said 22d of January he so sold the five gallons of oil to Inglis, and forwarded the money received therefor to the company; that the Elliott cup was invented and used only for the purpose of making the flash test, and was not a suitable instrument for making the fire test; that when no other method was expressly provided by law, the usual and common method of testing kerosene oil by the fire test, among buyers, sellers, inspectors and others, was the Tagliabue cup; and that by all the tests made by witnesses for the State by that cup, as well as by all those, some ten in number, made by the witnesses for the accused, by that and other similar open cups, the fire point of the oil in question was not below 110 de-

grees F., being—by the tests by that cup made by the
State's witnesses—not less than 117 degrees F., and by
those made by the witnesses for the accused, by that and
similar cups, not less than 128 degrees F.; although by
all the tests, either by witnesses for the State or for the
accused, by either the Elliott or the Tagliabue or other
cups, the flash point of said oil was below 110 degrees F.

The accused asked the court to charge the jury (1) that
within the meaning of the statute (§ 4579) he did not keep
said oil for sale, "as he had no ownership or interest in it
in any way, but merely sold it as the employee of the
owner"; (2) that the words of the statute prohibiting the
keeping of any "fluids for illuminating purposes, imflam-
mable at a less temperature than one hundred and ten degrees
Fahrenheit," meant the oil or liquid kept for the purpose,
and not the vapor which might arise from such oil or liquid;
and that the temperature named in the statute was the fire
point at which the oil itself would burn, and not the flash
point at which the vapors of the oil would flash without
burning continuously; and (3) that if the jury should find
that "the usual and common method of testing the oil in
question in this case was, at the time of the alleged offense,
and for a long time had been, by the open cup, and that
when tested in that manner the oil in question was not
inflammable at less than 100 degrees Fahrenheit, they
should find the defendant not guilty, even though it is
possible, by means of the closed cup or otherwise, to cause
said oil to burn at a less temperature."

The State claimed and asked the court to charge that
kerosene oil is "inflammable" at the so-called flash point.

Upon the subject of these three requests the court
charged the jury as follows:—

Upon that of the first: "If you are satisfied that the
accused on that day had such oil in his possession and for
the purpose of delivery by sale to another, or others, then
it is immaterial whether in so doing he was conducting an
independent business of his own, or was acting as agent
for some one else. If he was himself actually in charge of

the business, the requirement of the law is satisfied as to that feature."

Upon that of the second: "A fluid is inflammable, within the meaning of the statute, where upon the ignition of the liquid or its vapor by the application of fire, the process of burning or combustion, if not checked or interrupted by some outside influence, continues until the fluid is consumed."

Upon that of the third: "This is all a question of fact for you to determine. Our law specifies no precise method for conducting these tests, and no precise apparatus to be used. You must be satisfied that any given apparatus used here is a proper one for the purpose, and that properly and carefully used it is capable of producing accurate and reliable results, before you accept those results as the basis of any conclusion of yours. Such tests as you find to have been properly made, and with any apparatus which you are satisfied is well adapted to the purpose, you are, of course, justified in using in aiding you to your final conclusion."

The failure of the court to charge as requested, and the instructions given contrary to such requests; certain rulings upon questions of evidence hereafter to be noticed; and the denial of the defendant's motion to set aside the verdict as against the evidence,—are the errors assigned in the defendant's appeal. A bill of exceptions was filed by the State, and allowed by the court under § 804 of the General Statutes, to the refusal of the court to charge as requested by the State, that the fluid in question was inflammable, within the meaning of the statute, at the flash point, and to the charge of the court upon the subject of said request.

That the first of the defendant's requests in effect asked the court to instruct the jury as a matter of fact that the accused had no ownership or interest, in any way, in the oil he was selling, but merely sold it as an employee of the owner, was a sufficient reason for refusing it. What interest the accused had in the oil, and in what capacity he was acting when keeping and selling it, were questions

for the jury, in so far as they were pertinent to the case. Under the instructions given by the court upon the subject of this request, the jury must have found that the accused had the oil in his possession on the day alleged, for the. purpose of delivering it himself, under a contract of sale, to the purchaser; and that he was himself actually in charge of the business of carrying the oil in question about in a tank-wagon, and selling and delivering it to others, who wished to purchase it.    These facts rendered the accused liable under the statute (§ 4579), if the oil was inflammable at a prohibited temperature.    The statute punishes the person who keeps such oil for sale.    One may be a keeper who is not an owner.    Nor is one any the less a keeper who keeps and sells something for its owner. That one acts himself although acting for another, does not conflict with the maxim of *qui facit per alium facit per* *se.*    Having done the precise act forbidden by the statute, the accused cannot escape its consequences by proving that he acted as the agent of another.    *State* v. *Wadsworth,* 30 Conn. 55, 58; 1 Whar. on Criminal Law (9th Ed.) § 95.

The court charged the jury substantially in compliance with the defendant's second request, that the fire test was the correct test of inflammability.

The court properly refused to charge in accordance with the defendant's third request.    What instrument should be used in determining the temperature at which oil is inflammable is sometimes prescribed by statute, as in New York State.    1 New York Revised Statutes, Codes and General Laws (3d Ed.) p. 1010, §§ 23 and 24.    Our statute does not specify the instrument . to be used in ascertaining the point of inflammability of the fluids kept for sale for illuminating purposes.    In the absence of any such statutory provision, and of any fact showing that it was intended that any particular instrument or method should be used in ascertaining the point of inflammability, which is made the test of the right to keep such fluids for sale, those reasonably accessible instruments and methods

by which that point can be most accurately ascertained should be used for that purpose. Whether the Elliott or the Tagliabue, or some other of the cups used to test the temperature of the oil in the present case was the proper and most reliable one to be used for that purpose, was a question of fact for the jury to decide upon the conflicting evidence before them upon that subject.

During the trial the State's Attorney was permitted, against the defendant's objection, to ask the State's witness, Professor Bradley, whether the material which he put into the cup when he made his tests was properly called a liquid or a fluid. To which he answered, "I should say both." The defendant claims that this evidence was objectionable, as it tended to prove that the flash point, at which the fluid vapor burns, is the correct test of inflammability of the oil. But the defendant could not have been injured by this evidence, since under the charge of the court the jury must have found that the fire point, not the flash point, was the true test of inflammability.

Upon rebuttal, and against the defendant's objection, the court permitted said witness Bradley to testify, in effect, that it was possible for a lamp filled with kerosene oil to explode, and another witness for the State to testify that such a lamp had exploded in his own house. It is sufficient to say of this evidence that the question whether it should have been received after the defendant had rested his case was within the discretion of the court.

There was no error in the denial of the defendant's motion to set aside the verdict as against the evidence. From the charge of the court we must assume that the jury regarded the fire point as the correct test of inflammability. Since that point was shown to be below 110 degrees F. by no other test than those made with the Elliott cup, the case must have turned upon the question whether the results obtained from the tests made with that cup, or those made with the Tagliabue or other cups, should be accepted as correct, and the jury must have

found the Elliott cup to be a proper and reliable instrument to ascertain the fire point of the oil in question. This conclusion was supported by the testimony of Professor Bradley. It was within the province of the jury to accept his testimony upon this question of fact, as they evidently did, although it was clearly in conflict with that of several witnesses, and we cannot say that the trial court erred in refusing to set their verdict aside.

Since there is to be no new trial, we cannot consider the questions raised in the State's bill of exceptions.

There is no error.

In this opinion the other judges concurred.