CHRISTINA HENRY, APPELLEE, v. OMAHA PACKING COMPANY, APPELLANT.

FILED MARCH 19, 1908.   No. 15,114.

1. **Trial: NEGLIGENCE: QUESTION FOR JURY.** When different minds may honestly draw different conclusions as to whether admitted facts prove or disprove negligence, the question is for the jury.

2. **Principal and Agent: NOTICE TO AGENT.** While, during the existence of the relation of principal and agent, the agent receives notice in his private capacity of facts not then concerning his principal, but afterwards acts for the principal in a matter in which such facts are material, the notice so received by the agent should be imputed to the principal.

3. **Instruction** examined, and *held* justified by the evidence.

4. **Damages: INSTRUCTIONS.** In an instruction to a jury that the plaintiff is entitled to recover such damages "as she may have received" by reason of the injuries complained of, the use of the word "may" does not introduce an element of conjecture and uncertainty, and such an instruction is not erroneous upon that ground.

5. **Appeal: INSTRUCTIONS.** A party cannot predicate error in the giving of an instruction upon the ground that the same is not sufficiently explicit and particular, unless he has first called the attention of the court to such defect, and the court has refused to correct the same.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*T. J. Mahoney* and *J. A. C. Kennedy,* for appellant.

*Benjamin S. Baker* and *E. C. Wolcott, contra.*

CALKINS, C.

The defendant is a corporation engaged in the packing business at South Omaha, and the plaintiff was on the 10th day of November, 1904, employed by the defendant in its packing house. While so employed the plaintiff became sick. It appears that it had been the custom of the defendant for some years to convey to their homes such employees as became sick or injured while at work, and on this occasion the foreman under whom the plaintiff was working directed the barn boss to get a carriage ready to take her home, and the barn boss thereupon hitched to one of defendant's buggies a mare belonging to Mr. Urquhart, the defendant's general manager, and the defendant's receiving clerk undertook to drive the plaintiff home in the conveyance so provided. After proceeding a short distance the mare became frightened and unmanageable, and the plaintiff was thrown from the buggy to the pavement and injured. To recover the damages caused by such injury, she brought this action, charging the defendant with negligence in using to convey her to her home a horse vicious and unsafe, and known by it to be such. There was a verdict for the plaintiff, and from a judgment rendered thereon the defendant appeals.

1. The first contention of the defendant is that there was not sufficient evidence to warrant a finding that the previous record and history of the mare was such that a person of ordinary prudence ought not to have used her under the circumstances shown. It appeared that she had belonged to a Mr. Olney, who was called as a witness concerning his experience with the mare, and testified as follows: "I started out from the stock yards to go home, and took a man with me that was quite a heavy man, and we had driven probably a quarter of a mile when the hind

wheel on the right side broke. The axle broke right off the spindle. That frightened the mare, and she commenced to run, and I did my best to control her, but couldn't do it. She ran through a viaduct, and as soon as we got through there the other wheel on the same side broke—the front wheel—and with the top up we were in a perilous condition; so I pulled on one rein as hard as I could in an attempt to throw her, which I did, and of course that saved us." Being asked what speed she was going, witness answered that she was going as fast as she could go on a road. The evidence discloses that the witness Olney never drove the mare any more, but sold her to Mr. Urquhart through a man named Walwork, who acted for Mr. Urquhart in the transaction. The mare afterwards became unmanageable while being driven by Mrs. Urquhart, concerning which Mr. Robertson, a witness, testified that he, with his son, was riding on Center street, and met Mrs. Urquhart going in the other direction; that he was on the left side of the road, and anticipated the boy would follow him there too, but instead of that the boy crossed over to pass her on the right side; that the horse thereupon turned right square around, and ran about a hundred yards, and fell about six feet from where the witness was; and that he ran up and caught the horse's head until the ladies were released; they having fallen over the dashboard and upon the horse. The evidence of the two witnesses referred to tended to show that the mare was subject to be frightened at the happening of unusual occurrences, and when so frightened became unmanageable. Whether it is prudent to use such a horse to drive a sick woman upon a busy street is a question that would be likely to receive different answers from different individuals. A timid, cautious driver would hesitate to use such an animal, while a bold and skilful horseman might regard the danger involved as beneath his notice. When different minds may honestly draw different conclusions as to whether admitted facts prove or disprove negligence, the question is for the jury. *City of Lincoln v. Gillilan,* 18 Neb. 114. The question

whether the use of a horse with the record and history of this mare for the purpose and under the circumstances shown constitutes negligence was for the jury, and not for the court.

2. The evidence discloses that Mr. Urquhart was the general manager of the defendant's packing house plant and business at South Omaha, and that the mare in question was his private property, and had been used by him for a time to drive in the morning from his home in Omaha to the defendant's place of business and to return at night; the mare being kept in the defendant's barn during the day. It also appears that this use of the mare did not continue up to the date of plaintiffs' accident; that for some time previous thereto the mare had been left in the barn, and had been used in the defendant's business by defendant's employees in the same manner as if she belonged to the defendant. There is no evidence that Mr. Urquhart ever gave any specific directions about the mare or her use, but, he being the general manager of the defendant in charge of all its employees, as well as the owner of the horse, it is fair to presume that the use of the mare in the business of the defendant was by his authority. This being the case, we think that the ownership of the mare was immaterial. If defendant's liability exists at all, it must grow out of the fact that it used an unsafe horse, and it matters not who owned the horse. This becomes important when we consider whether the notice to Mr. Urquhart of the mare's faults was notice to the defendant. It is insisted that notice to Mr. Urquhart was not notice to the defendant; that he acquired notice in his personal and private transactions and capacity which, at the time of being so received, was a matter of no concern to his principal, to whom such knowledge could not therefore be imputed. In its brief the defendant says: "The rule respecting notice to an agent being notice to the principal is based on the theory that what the agent knows it is his duty to communicate to his principal, and he will be presumed to have performed that duty. As a corollary it

follows that, where no such duty exists, no such presumption can be indulged. If an agent receives notice in and through the discharge of his duties as agent, the courts hold such notice to bind the principal. *Again, where an agent receives notice in his private capacity, but afterwards acts for the principal in a matter in which the notice is material, the notice to the agent ought to be held notice to the principal.* The last clause of the quotation from defendant's brief, which we have italicised, is precisely applicable to this case. When Mr. Urquhart received notice of the mare's infirmities through the accident to his wife, it was in his private capacity, and of no concern to his principal. Had he then left the employ of the defendant, after which the defendant had acquired title to the mare, no notice would have been imputed to the defendant from the knowledge of its former agent acquired in his personal capacity. But, when Mr. Urquhart put the mare in the defendant's barn and permitted her to be used in defendant's business, he was acting for his principal in a matter in which the notice was material, and the notice to him ought, in the language of defendant's brief, to be held notice to the defendant.

3. Instruction numbered 4, given by the court on its own motion, was as follows: "Knowledge or notice to the general manager of the defendant company of the use of the mare for the defendant company, and of her vicious and dangerous propensities, provided you find from a preponderance of the evidence she had such vicious and dangerous propensities, or knowledge or notice to an employee of the vicious and dangerous propensities of said mare over which he had supervision and control at and prior to the accident, would be notice to the defendant company, and it is not necessary that such knowledge or notice be established by direct evidence, if you find from a preponderance of the evidence that such general manager or employee had such knowledge or notice." The defendant contends that there is no evidence

19

to show that any employee having charge of the mare had notice of any vicious disposition on her part, and that so much of the instruction as tells the jury that notice to such employee would be notice to the defendant is erroneous. The barn boss, Homan, and his helper, McCorley, were called as witnesses for the plaintiff, and were examined as to their knowledge concerning the character of the mare. Mr. Homan, after testifying to having said he did not "think it was a lady's horse to drive," admitted that such remark was made in a conversation with Mr. Urquhart in which the latter had told him of some trouble that his wife had with the mare. Mr. McCorley, being asked if he had heard of the mare running away prior to the accident of the plaintiff, said: "I heard it in this ear, and let it go out the other. I didn't pay any attention to it." He afterwards stated that he heard it from a stranger who had been drinking, and, being examined by defendant's attorney, stated that it was after the accident of plaintiff. Considering that these witnesses, though called by the plaintiff, were evidently hostile to her, and made the slight admissions above quoted with reluctance, we cannot say there was no evidence to justify the giving of the instruction complained of.

4. The defendant complains of the use of the word "may" in the following taken from one of the instructions given by the court on its own motion: "If the plaintiff has established these facts by a preponderance of the evidence, then the plaintiff would be entitled to recover such damages as she may have received by reason of the injuries complained of, not exceeding the sum of $2,000." A charge which allows damages for the pain and suffering which plaintiff *may* endure hereafter is erroneous, as allowing the jury to go into the field of mere probability. *Nixon v. Omaha & C. B. Street R. Co.*, 79 Neb. 550. Used concerning a past transaction, the word is not capable of such a construction. To speak of such suffering as one may endure in the future is to introduce into the estimate an element of conjecture and uncertainty which is not

at all involved in speaking of the damages one may have sustained in the past. The amount of the latter cannot, under any construction of the language used, exceed the damage which has actually been sustained. The trial judge, not being permitted to assume that the plaintiff had suffered any damage, used the word "may" to express the possibility of the existence of such damages, which were limited by the amount that she had already experienced, and therefore no element of probability was included. We think the rule laid down in *Nixon v. Omaha & C. B. Street R. Co.,* has no application to the case at bar, and there was no error in the use of the word "may" in the instruction complained of.

5. Finally, the defendant complains of the seventh instruction given by the court on its own motion, on the ground that, after instructing the jury that, if it finds for plaintiff, to award her the amount of the pecuniary loss she has sustained by being unable to work, it adds that "she is also entitled to recover on account of bodily pain and suffering," without limiting the latter to such bodily pain and suffering as is caused by the injury. The defendant argues that this instruction authorizes the jury to give damages for pain and suffering without reference to whether the same were established by the evidence or caused by the injury. The instruction is in the matters complained of too general. It is right as far as it goes, but not sufficiently explicit. It falls into that class of instructions where the charge does not necessarily mislead the jury, but where, from want of particularity, there is danger that it may do so. In such cases "there is no ground of error, unless the appropriate complementary instruction was requested and refused." 2 Thompson, Trials, sec. 2346; *Republican V. R. Co. v. Fellers,* 16 Neb. 169; *Sioux City R. Co. v. Brown,* 13 Neb. 317. This case furnishes an illustration of the reason for the rule. The attention of the court and counsel was directed to the question whether the evidence tended to show the dangerous character of the horse, or whether notice of

her vicious disposition could be imputed to the plaintiff. A large number of instructions were prepared and presented by the defendant upon these points, but no suggestion was made to the court upon the element of damages, nor was the deficiency of instruction numbered 7 in any way pointed out. It is the duty of counsel "to give attention to the charge of the judge, and if, in their opinion, it omits to give direction as to the law applicable to any essential feature of the evidence, to call his attention to the omission and to request appropriate suppletory instructions; and where they fail thus to call his attention to something which he may fairly be supposed to have omitted from inadvertence, they ought not to be allowed to complain of the omission in appellate court." 2 Thompson, Trials, sec. 2341.

We therefore recommend that the judgment of the district court be affirmed.

FAWCETT and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.