MARK DONOVAN, SR., ADMINISTRATOR, *vs.* THE CONNECTICUT COMPANY.

Third Judicial District, New Haven, June Term, 1911.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

Proof of the defendant's negligence is unavailing if there is no evidence, direct or circumstantial, of a causal connection between such negligence and the injury sustained by the plaintiff; for under such circumstances the jury can only surmise or conjecture as to what might possibly have caused the injury, and this the law will not permit.

The plaintiff's intestate, a street-railway motorman, was killed in consequence of the derailment of his car and its headlong plunge over an artificial embankment twenty-five feet high into a pond. There was a slight curve at the place of the accident, but no guard-rail to prevent a car from leaving the track in the direction of the pond, nor any fence or other obstruction to stop the progress of the derailed car down the embankment, the edge of which was about four feet from the nearest track. Considerable snow had fallen during the afternoon and night prior to the accident, and evidence was introduced tending to prove that the point of an automatic switch and the groove of the track beyond it were clogged and choked with ice, snow and sand, and that this caused

the flange of the wheels to ride upon the compacted mass and brought about the derailment of the car, which was running at a moderate speed. Upon an appeal from a judgment of nonsuit it was *held* that the ultimate question presented by the case was not whether the defendant was negligent in not providing some one of these barriers, or in doing or in omitting to do this, that, or the other incidental act complained of, but whether or not, in view of all of the conditions known and which should have been known to it the defendant had neglected its duty as master in continuing to run its cars, or this particular car, over the place of the accident; and that in view of the obvious dangers arising from the permanent conditions and of those naturally to be apprehended from the storm, and of the direct testimony of two experienced motormen that the conditions at this point several hours before the accident were such as to make the operation of cars there unsafe, enough of a case had been made out to forbid the granting of a nonsuit.

The erection of a barrier or the adoption of other safeguard, after an accident, is not an acknowledgment or admission of prior negligence; and therefore a trial court having admitted photographs of the locus taken upon the day of the accident, may very properly, in the exercise of its discretion, exclude those taken at a later date which show no change in the situation except the erection of the barrier or other safeguard.

Argued June 6th—decided July 31st, 1911.

ACTION to recover damages for negligently causing the death of the plaintiff's intestate, brought to the Superior Court in New Haven County where the plaintiff was nonsuited in a trial to the jury before *Williams, J.,* from which judgment he appealed. *Error and new trial ordered.*

The evidence offered by the plaintiff tended to establish the following facts:—

A single line of the defendant's tracks extended in a slight curve around the east end of Rimmon Pond upon an artificial embankment, which at the place of accident was twenty-five feet higher than the surface of the water and declined rapidly to the water's edge. Approaching from the north, a second line of tracks joined the line already referred to upon this embankment and immediately opposite the pond. Connection was

made by the use of an automatic switch. The point of the switch was next to the westernmost rail, which ran along within about four feet of the edge of the embankment. Southerly of this point there was a guard-rail laid easterly of the west rail and about two or three inches therefrom. The purpose of this rail was to prevent derailments of cars to the outer side of the curve in the tracks, being the side farthest from the pond. There was no such rail to serve a similar purpose on the opposite or pond side; neither was there a fence or other construction on that side to interpose an obstacle to the progress of a derailed car down the embankment into the pond. At a distance northerly of the point of the switch, which one map showed to be one hundred and ten feet and another one hundred and seventy-six feet, was a signal-box used by conductors in running their cars.

During the afternoon of December 25th, 1909, there began a heavy fall of snow, accompanied with wind, which continued through the succeeding night and into the forenoon of the 26th. In all the total fall, variously estimated, was from ten to fifteen inches. Snowplows were called into service by the defendant, and its cars were operated during the night with more or less difficulty.

During the forenoon of December 26th, the plaintiff's intestate was sent out as a conductor in charge of a car going south, whose destination was Derby. When his car reached the signal-box referred to, it stopped, and the intestate went to the box and returned to the car by the front door leading into the front vestibule. The car then proceeded at a moderate rate of speed along the embankment until it reached a point at or a short distance beyond the point of the switch, when it left the rails and plunged headlong down the embankment into the water. The front end of the car was wholly sub-

merged, and about two thirds of it under water. The few passengers were rescued, but the lifeless bodies of the motorman and conductor were taken from the front vestibule, the doors of which were found closed. The body of the motorman was found in a standing position at the controller box, and that of the conductor "down in a heap" on the floor.

Other pertinent facts are sufficiently stated in the opinion.

*Charles S. Hamilton*, with whom was *Frederick M. McCarthy*, for the appellant (plaintiff).

*Harry G. Day* and *Thomas M. Steele*, for the appellee (defendant).

PRENTICE, J. The plaintiff in his complaint charges that his intestate met his death by reason of the defendant's negligence in permitting the car which was given into his charge, in its then condition, and with its then equipment, to be used at the time and place when and where the accident occurred. This general charge of negligence is amplified and supported by the specification of a number of matters which, it is alleged, entered into the situation to give the defendant's conduct the negligent character imputed to it. Some of these incidental matters are themselves characterized as having been occasioned by the defendant's negligence.

It is alleged that the car itself was unfit for the use to which it was put at the time and place in question, for various reasons. Upon the trial evidence was offered from which the jury might have found that it had a flat wheel, that it was not equipped with scrapers, and that the doors leading from the body of the car into the front vestibule did not operate freely. There was,

however, an entire failure to show a causal connection between any one of these features and either the derailment of the car or the fate which befell the intestate in its front vestibule. No such connection was either obvious, or indicated by either direct testimony or circumstances shown. For the jury to have found it upon the evidence presented would have been to find it upon no more substantial basis than a surmise or conjecture. *Kruck* v. *Connecticut Co.*, 84 Conn. 401, 80 Atl. 162.

Other conditions, enumerated in the complaint as entering into the situation to make the defendant's conduct negligent, concern the condition of the roadbed and tracks, and the safeguards against mishaps. Evidence was offered tending to show that the tracks at the place of accident ran along the top and only a few feet from the edge of a high embankment, at the base of which was a pond; that at the top of the embankment two lines of tracks were brought together into one by means of an automatic switch; that there was no guard-rail to prevent derailment in the direction of the edge of the embankment, or fence or other construction to obstruct the progress of a derailed car down the embankment; that beginning during the afternoon of the day prior to the accident and continuing through the night and into the following forenoon there was a heavy fall of snow, amounting to from ten to fifteen inches, accompanied with wind; that at the time of accident, in the neighborhood of eleven o'clock, the point of the switch and possibly the groove beyond and between the westerly rail and guard-rail, were packed with snow and ice, and perhaps sand; that the car in which the intestate was was proceeding at a moderate rate of speed; and that it was derailed while passing over the switch or immediately thereafter.

It was possible for the jury to find, from the evi-

dence presented, that the car was derailed by reason of the choked and perhaps frozen condition of the switch, which either prevented it from working properly, or caused the flange of the wheels to ride up on the compacted mass which filled the groove in which it was intended to run, or perhaps by reason of that condition in connection with the similar condition of the groove beyond the switch, and that, having become derailed, it plunged down the embankment with nothing to stay its progress.

The plaintiff, having shown that there was neither guard-rail, fence, nor other construction to prevent or minimize the danger from derailment in the direction of the pond, as indicated, offered no evidence to establish that proper construction of the line as one for general use called for any such equipment or construction. He thus lost any benefit he might have derived, had the case gone to the jury, from a finding that the defendant was negligent in this independent particular. But for present purposes his failure in this regard does not possess large significance. The ultimate question presented by the case was not one as to whether or not the defendant was negligent in not providing these things, or some one of them, or in doing or omitting to do this, that, or the other incidental act complained of, but whether or not, considering all things known to it or which by the exercise of due care would have been known to it, it was negligent in respect to its duty as master in continuing to run its cars, or in particular this car, over the place in question. Whether or not due care in construction required a guard-rail, fence, or other erection, as claimed, the threatening character of the embankment, under the conditions in fact, to a car which should become derailed upon the side of the pond, was as obvious as it was real. It was therefore one to be considered

in any determination by the company as to whether its cars should be run over its tracks at this place under conditions as they might arise, and by a jury as to whether the running of cars under such conditions was the exercise of due care.

The permanent conditions at the place of the accident were, of course, known to the defendant. The jury might well charge it with knowledge of the storm and its probable consequences. Among the plaintiff's witnesses were two motormen of experience, one of whom testified that he took a car over the locus a short time before midnight of the 25th, and the other, that he ran over it at about six A. M. of the 26th. Each testified that at these respective times the conditions were such that it was not safe to operate cars there. They were not asked, as they should have been, to give their reasons for this opinion, or to state the conditions which furnished the foundation for it. But the evidence was received, and with it evidence as to conditions eleven and five hours, respectively, before the accident, as bearing upon the question of notice, and with this and the other evidence touching the conditions at the time the ill-fated car left the track and plunged down the embankment, enough of a case was made out to forbid the granting of a nonsuit.

Photographs of the locus taken on the day of the accident were offered and admitted. Other photographs were not admitted. These latter were taken a few days before the trial, and showed a guard-rail and fence, such as the plaintiff claimed should have been there at the time of accident. The plaintiff claimed to have shown, and apparently successfully, that the situation as disclosed in the photographs had remained unchanged, except for said rail and fence, and proposed to indicate this change to the jury. The court acted in the proper exercise of its discretion in its ruling, and

thus prevented the plaintiff from bringing to the attention of the jury, through these cumulative photographs, a fact not proper for them to know, and which might well be prejudicial to the defendant. Had the photographs been admitted, the plaintiff would have been permitted to accomplish by indirection what was forbidden to him by direct processes. *Nalley* v. *Hartford Carpet Co.*, 51 Conn. 524, 531.

The other rulings complained of do not call for attention. They arose from the manner in which the evidence was presented, and it is scarcely possible that the same situations will arise again.

There is error and a new trial is ordered.

In this opinion the other judges concurred.