## MARK DONOVAN, SR., ADMINISTRATOR, *vs.* THE CONNECTICUT COMPANY.

Third Judicial District, New Haven, June Term, 1912.

HALL, C. J., PRENTICE, THAYER, RORABACK AND WHEELER, JS.

It is for the jury to determine the credibility of witnesses and the weight and effect to be given to conflicting testimony.

It is within the province of the trier, whether judge or jury, to infer facts from those already found, upon which an ultimate conclusion may rest in whole or part. In jury trials, if the court, in the light of the evidence as weighed by its experience and knowledge of events, finds that there is any probability or presumption which would lead reasonable men, reasoning logically, to draw such inference, it should leave the ultimate question to the jury. If none such exists, such question should be withdrawn from their consideration.

The plaintiff's intestate, a street-railway conductor, was killed in consequence of the derailment of his car. It was claimed, among other alleged acts of negligence, that the derailment was due to the defendant's negligence in permitting the use of a car with a flat wheel. There was conflicting evidence as to whether the car had a flat wheel, and uncontradicted evidence that a flat wheel might have caused the derailment. The court instructed the jury that there was nothing in the case which would permit them to find that the flat wheel had anything to do with the accident. *Held* that, since the jury might have found that the car was equipped with a flat wheel, and that this defect might have caused the derailment, and since it was logically possible to infer from these facts the further fact that the flat wheel did cause or tend to cause the derailment, it was error for the trial court to withdraw from the jury this alleged ground of negligence.

The plaintiff also claimed that the defendant was negligent in permitting the car to be operated over a track having a switch, at or near the place of the accident, and a groove in which the flanges of the wheels ran, which groove had become full of dirt, ice, and snow. There was no evidence in the case of any rule of the defendant or any duty which imposed an inspection of the switch and rails upon the conductor. The court charged the jury, in effect, that they might find that it was the duty of the deceased to inspect or clear the switch at the time and place of the accident. *Held* that it was error so to charge in respect of a duty so foreign to the ordinary duties of· a trolley-car conductor without some definite proof of the existence of the specific duty.

An instruction as to the assumption of the ordinary and extraordinary risks of an occupation should include an explanation of what would in law constitute an ordinary and what an extraordinary risk.

A charge that no recovery could be had if the risk which befell the deceased was an extraordinary one, of which he knew and which he voluntarily assumed, was too narrow.    The court should have said that if the jury found the risk to be an extraordinary one there would be no assumption of it unless the intestate voluntarily continued in the defendant's service after that risk was known to and comprehended by him.

An objection to a question as to a witness' former statement in his testimony before the coroner, upon the ground that it did not quote the coroner's testimony, belongs to that class of objections whose use too often clogs trials, distracts the attention of the trier, and serves no useful purpose.    Such an objection was improperly sustained. But this error would not require the granting of a new trial, since there was nothing in the record to indicate that it had prejudiced the plaintiff's rights.

Argued June 11th—decided July 26th, 1912.

ACTION to recover damages for injuries resulting in the death of the plaintiff's intestate and alleged to have been caused by the defendant's negligence, brought to the Superior Court in New Haven County and tried to the jury before *Bennett, J.;* verdict and judgment for the defendant, and appeal by the plaintiff.    *Error and new trial ordered.*

*Charles S. Hamilton,* with whom was *Frederick M. McCarthy,* for the appellant (plaintiff).

*Harry G. Day* and *Thomas M. Steele,* for the appellee (defendant).

WHEELER, J.  This case was before us in 84 Conn. 531, 80 Atl. 779.   The pleadings remain unchanged.

The complaint alleges that the intestate suffered injuries through the derailment of the defendant's car by reason of the defendant permitting its trolley-car, equipped with front vestibule doors, which were very difficult and almost impossible to operate, with wheels

which were old, worn out, broken, cracked and worn flat on one side, and the flanges of which were worn out, chipped, broken, and insufficient to hold the car on the rail, and with old, worn out, and broken scrapers, to be operated over a track having, at or near the place of the accident, a switch and groove formed by a guard bolted to the rail, forming practically a guard-rail, in which the flange of the wheel ran along the inside of the right-hand rail, said groove being full of dirt, ice, and snow, causing the flange to rise upon and over the rail, located a few feet from the edge of a high embankment, at the base of which was a pond, and having no guard-rail to prevent derailment alongside of the rail nearest the embankment, and with no fence or other construction to obstruct the progress of the derailed car down the embankment.

The ground of negligence alleged was in permitting the use of the car at this time and place, in its then condition, with defective equipment, over a defective track having no proper safeguard to prevent or minimize the danger from derailment in the direction of the pond. *Donovan* v. *Connecticut Co.,* 84 Conn. 531, 534, 80 Atl. 779.

The plaintiff offered evidence in support of most of these defects. In at least one important particular, evidence was offered supplying the omission of the causal connection noted in the former opinion by proof that proper railroad construction required the said guard-rail, fence, or other construction in the direction of the pond, to prevent or minimize the danger from derailment.

The judge charged the jury: "And in all these respects, the doors, the flat wheel, the scrapers, the brakes, there has never been in this case anything or any evidence to show, or any circumstances which would permit you to say that those defects, if you should find the allegations true, had anything to do with causing this accident. You will, therefore, leave them out of

your consideration when you are deliberating in regard to your verdict in this case."

The facts claimed to have been proved by the plaintiff, as they appear in the finding, required this charge, so far as applied to the defective doors, scrapers, and brakes. So far it followed our former opinion.

The flat wheel was one of the defects in equipment to which the accident was attributed in the complaint. The finding sets forth: That the plaintiff offered evidence that the car had had a flat wheel thirteen days before the accident, and also on the night before, and on the morning of, the accident; and it sets forth that the defendant offered evidence that this car had been in use the three days prior to the accident, and had no flat wheel, or other wheel defect, at the time of the accident. Here was a conflict in the evidence.

In a late case this court said: "From an examination of the evidence it is apparent that there was a decided conflict in the testimony of the witnesses, and the weight to be given the evidence must have been one of the material questions in the determination of the case. It was for the jury to determine the credibility of the witnesses and the weight and effect of their evidence." *Schleifenbaum* v. *Rundbaken,* 81 Conn. 623, 624, 70 Atl. 899; *State* v. *Boylan,* 79 Conn. 463, 470, 65 Atl. 595; *State* v. *Bissonnette,* 83 Conn. 261, 266, 76 Atl. 288; *Hogben* v. *Metropolitan Life Ins. Co.,* 69 Conn. 503, 510, 38 Atl. 214; *Occum Co.* v. *Sprague Mfg. Co.,* 34 Conn. 529, 538.

The finding of the existence of the flat wheel involved consideration of the credibility of witnesses, or of the weight or effect of evidence.

The plaintiff also offered evidence to prove that with a flat wheel "there is danger of its [the car] jumping"; that "they [the witnesses] should think it [the flat wheel] would derail it [the car]"; and that "the flat wheel might have a tendency to cause a derailment."

There was no evidence offered in contradiction of this; but, whether disputed or not, it was for the jury to find whether the flat wheel might cause a derailment.

If, then, the jury found that this car was equipped with a flat wheel, and that such a wheel might cause a derailment, and that the car in fact became derailed, could the jury legally infer or conclude that the cause, or one cause, of the derailment was the flat wheel?

All courts agree that the trier—judge or jury—may infer facts from those already found, upon which its ultimate conclusion may rest in whole or part. *Bunnell* v. *Berlin Iron Bridge Co.*, 66 Conn. 24, 36, 33 Atl. 533; *C. & C. Electric Motor Co.* v. *D. Frisbie & Co.*, 66 Conn. 67, 78, 33 Atl. 604; *Doyle* v. *Boston & A. R. Co.*, 145 Mass. 386, 14 N. E. 461. And the jury may make all inferences and conclusions which, in their judgment and discretion, may logically and reasonably be drawn from the facts in evidence. *North Chicago Street R. Co.* v. *Rodert*, 203 Ill. 413, 67 N. E. 812; *Columbus* v. *Strassner*, 138 Ind. 301, 34 N. E. 5, 37 id. 719; *Gavett* v. *Manchester & L. R. Co.*, 16 Gray (Mass.) 501, 506.

The test is, not that the inference must unavoidably and unerringly point in one direction, but, rather, whether the rational mind could with reasonableness draw the inference. *Hanrahan* v. *Baltimore City*, 114 Md. 517, 535, 79 Atl. 197; *M'Elderry* v. *Flannagan*, 1 Harris & G. (Md.) 308.

If two rational minds could reasonably draw different inferences from facts in evidence, whether controverted or uncontroverted, the decision is for the jury. *Mumma* v. *Easton & A. R. Co.*, 73 N. J. L. 653, 658, 65 Atl. 208; *Harvell* v. *Weldon Lumber Co.*, 154 N. Car. 254, 262, 70 S. E. 389; *Central Coal & Iron Co.* v. *Owens*, 142 Ky. 19, 21, 133 S. W. 966; *Powers* v. *St. Louis Transit Co.*, 202 Mo. 267, 100 S. W. 655; *Miller* v. *Sovereign Camp,*

140 Wis. 505, 507, 122 N. W. 1126; *Galvin* v. *Brown & McCabe*, 53 Ore. 598, 101 Pac. 671; *Henry* v. *Omaha Packing Co.*, 81 Neb. 237, 115 N. W. 777.

In the first instance, the court determines whether there is any evidence having a logical and reasonable tendency to prove the fact, or the inference in dispute. If not, it should not submit the question to the jury. *Theobald* v. *Shepard*, 75 N. H. 52, 55, 71 Atl. 26; *Gavett* v. *Manchester & L. R. Co.*, 16 Gray (Mass.) 501. On the other hand, if reasonable men might find the fact or draw the inference, the court must leave the determination to the jury.

The court will judge the reasonableness of the inference claimed in the light of the evidence as weighed by its experience and knowledge of events, and if its conclusion be that there is no probability or presumption that would lead to this inference, it will exclude its consideration from the jury; if it conclude that there is such a probability or presumption, or that reasonable men, reasoning logically, might reach several conclusions, of which the one claimed was one, it will leave its finding and consideration to the jury. *Doyle* v. *Boston & A. R. Co.*, 145 Mass. 386, 388, 14 N. E. 461.

An inference or conclusion that the flat wheel caused or tended to cause the derailment of this car was certainly one of the inferences which reasonable men might draw from the facts before the jury, and could not be held to be an illogical and unreasonable conclusion in view of the finding which the jury, on the evidence, were at liberty to make of the existence of the flat wheel, of its tendency to cause a derailment, and of the fact of the derailment.

The withdrawal of this ground of negligence from the jury was based upon the want of causal connection between the accident and the flat wheel; and the presence or absence of this causal connection was an in-

ference or conclusion which was within the province of the jury to make. *Acker, Merrall & Condit Co.* v. *McGaw,* 106 Md. 536, 551, 68 Atl. 17.

The court did not, in express terms, comply with the defendant's request that it charge the jury: "There is no reason why, in the nature of things, it is any more the duty of the defendant than of its motorman or conductors to inspect and test switches during storms, to see whether or not they are in such condition that cars can safely pass over them." But in effect it did.

We cannot quote the charge on this point *in extenso.* Two extracts will suffice to show the justice of our interpretation. The court said: "And that there is no evidence, that I can remember, to show that there was any other agent who had a particular duty to inspect or clear it [the switch] at this time and place." The agent referred to was the intestate conductor. Later the court continued: "But I am asking you seriously to consider, taking all these circumstances into consideration, the fact that the snow-plow had been through there within a few hours before this time; that this car was approaching a switch; that there was no other servant or agent of the corporation there; whether it was not the duty of that man, in passing over that switch, and he being practically the only man to do it at that time and place, whether it was not his duty to do it."

There was no evidence before the jury of any rule of the defendant or any duty which imposed an inspection of the switch and rails upon the conductor. Under the admitted circumstances of the case, we do not think such a duty, so foreign to the ordinary duties of a trolley-car conductor, should be found, without some definite proof of the existence of the specific duty.

The court properly charged the jury that, if the risk which befell the intestate was one of the ordinary risks of his occupation, or if an extraordinary risk which he

knew, and hence voluntarily assumed, no recovery could be had. The situation called for an explanation of what would, in law, constitute an ordinary and what an extraordinary risk. The limitation of the assumption of the extraordinary risk to mere knowledge was too narrow. The court should have said, if the jury found the risk to be an extraordinary one, there would be no assumption of it, unless the intestate voluntarily continued in the defendant's service after that risk was known to and comprehended by him.

Recent decisions discuss this subject and make unnecessary more than reference to them. *Baer* v. *Baird Machine Co.*, 84 Conn. 269, 273, 79 Atl. 673; *Belevicze* v. *Platt Bros. & Co.*, 84 Conn. 632, 638, 81 Atl. 339.

The witness Rood, having testified that he had testified before the coroner, was inquired of: "Q. And you told him the car was going medium fast, didn't you?" The question was objected to, upon the ground that it should be asked by quoting from the coroner's testimony. The objection was improperly sustained. There is nothing in the record to indicate that the ruling so prejudiced the rights of the plaintiff that a new trial should be granted as a result of it. The objection belonged to that numerous company of objections whose use too often clogs trials, distracts the attention of the trier, and serves no useful legal purpose.

The analysis of the complaint in the former case was so clear that adherence to it will place the main issue before the jury with distinctness. For this reason, and because the other assignments of error are not likely to appear on another trial, we do not think it profitable to discuss them.

There is error, the judgment is set aside, and a new trial is ordered.

In this opinion the other judges concurred.