JOSEPH J. LUTHER, APPELLEE, v. FARMERS UNION
COOPERATIVE ASSOCIATION, APPELLANT.

FILED MAY 1, 1930. No. 27351.

*Wilmer B. Comstock* and *John H. Comstock*, for appellant.

*Max V. Beghtol, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD and DAY, JJ., and JAMES and WRIGHT, District Judges.

DAY, J.

This is an action to recover damages for personal injuries. From a verdict and judgment in favor of the plaintiff, the defendant appeals.

The first of the two errors assigned and argued is that the verdict is not sustained by sufficient evidence. The petition of the plaintiff alleges that the defendant owns and operates a grain elevator; that as a part of its machinery it maintained a dump and driveway for unloading wagon-loads of grain, which were so constructed that a wagon loaded with grain and drawn by horses is placed upon a movable platform in such a manner that a mechanical operation depresses the rear of the wagon and elevates the front so that the grain is unloaded by gravity; that during the operation it was necessary for the plaintiff in unloading said grain to cause his horses to stand on a narrow bridge elevated from the natural surface of the ground about two feet; that the gasoline engine operating the elevating machinery was near where the horses stood, so that the noise was intensified at that point; that the defendant maintained two large blocks of concrete so located that, if an unloaded wagon deviated from a direct line in driving out, the wheels would strike the blocks; that on the 19th of July, 1927, while the plaintiff, at the invitation of the defendant, in the exercise of due care, was unloading wheat, one of his team stepped off the

bridge, became frightened, and ran upon these stone blocks, tipping the wagon and throwing the plaintiff from his seat, thereby inflicting serious injuries. It is further alleged that the defendant was negligent in failing to provide a place of sufficient width on which to permit the horses to stand, or to maintain a guard-rail to prevent the horses falling from the bridge. The answer of the defendant admits the ownership of the elevator, and that the plaintiff was injured; but it alleges it was caused by the negligence of the plaintiff, in that he lost control of his team; that the plaintiff knew the team to be vicious and unruly before he drove into the elevator, and that if the plaintiff had exercised ordinary care in selecting the team or in driving into the elevator said accident would not have occurred. It is also alleged that the plaintiff was familiar with the elevator and all its apparatus, including the dump, bridge, engine house and rocks.

The plaintiff introduced evidence to support his allegations of negligence as hereinafter set out. Upon the day in question, the plaintiff was delivering grain to the defendant's elevator. He drove his wagon onto the dump for the purpose of unloading his wagon, with his team standing upon the bridge which connected the elevator with the driveway on which the unloaded wagon left the elevator. This bridge was 12 feet wide and 5 feet across and was elevated 22 inches from the ground. The dumping device was inclosed in an annex attached to the elevator building and the bridge was just outside of this covered part. The bridge was about two feet wider than the door, but the door was not in the center of the bridge. The bridge extended about six inches beyond the door to the south. There was no rail on this bridge. It was here the plaintiff's horse stepped off. About 10 feet to the east of the bridge were two rocks about one and one-half feet square and located about three feet from the wagon track of the exit driveway. The construction of the elevator was such that the gasoline engine which operated it had an exhaust out of the top of a small outbuilding at a place

which was approximately even with the horses' heads while standing for the dumping operation. There is evidence in the record tending to prove that in the proper construction of grain elevators the engine is located on the other side away from the horses, and that the bridge should be guarded by a rail to prevent the horses from stepping off. There had been trouble with horses becoming frightened at this elevator before and the men in charge of its operation had refused to stop the engine when other customers had complained that it frightened their horses. The plaintiff, himself, testified that the accident happened as follows: "Well, as the grain was running out—the engine scared them in the first place, being right in front of them, and when this started the machinery it began looking behind it and immediately pranced around and kind of stepped back, and he stepped off with his hind foot off of the bridge on the south side, and then in order to keep from falling he lunged ahead, and I had to give slack on the lines or it would have jerked me off the wagon, and before I could get the slack up it hit those rocks and throwed me off of the seat." "My going over those rocks threw me off."

It is the duty of the owner of property to exercise reasonable care to maintain it in a safe condition. *Perrine v. Union Stock Yards Co.*, 81 Neb. 790. There is evidence in this case to prove that the driveway through the elevator was not safe; that there was no guard-rail provided for the bridge; that customary and proper construction requires such a guard-rail; that the gas engine for operating the machinery of the elevator was located in a place that was not proper or customary in grain elevators; that its location was such as to be likely to frighten horses while wagons were being unloaded; that horses had been frightened in said elevator; that horses had been frightened by said engine; that rocks were laid upon the driveway so that a slight deviation from the track might tip a wagon in driving out. There is also evidence in conflict. All this raises a question of fact as to whether or not the owner of such elevator had exercised reasonable care to maintain it in a safe condition for persons using it.

It is argued by the appellee that, since this case was heretofore before the court, the previous decision became the law of the case. At the same time it is argued by the appellant that the evidence on the second trial is not identical with that of the first. This question presents some difficulty of determination where the assignments of error are that the evidence does not sustain the verdict. We have, however, examined this record fairly and completely, to determine whether or not the evidence in this case, now before the court, sustains the verdict, and we find that it does. Certainly such a situation presents a question of fact which would justify the jury in drawing an inference of negligence. The general rule is that, where there is a substantial conflict in the evidence upon a material matter and when different minds may honestly draw different conclusions from the evidence, the question is for the jury. *Henry v. Omaha Packing Co.*, 81 Neb. 237; *Craig v. Chicago, St. P., M. & O. R. Co.*, 97 Neb. 426.

The second assignment of error is that the court erred in overruling the motion of defendant to instruct the jury "that the testimony read from the bill of exceptions at the former trial shall not be considered by the jury as substantive evidence in this trial, and that it only goes to the credibility of the witness." Mr. Kuse, the manager of the elevator, was called as a witness for the defendant at the trial. In the course of his cross-examination by counsel for the plaintiff, he was interrogated concerning testimony given by him upon the former trial. The testimony given by him at the former trial was read to the jury for the purpose of impeachment. The witness admitted having made some of the statements attributed to him, denied others, and qualified some. The plaintiff offered in evidence from the bill of exceptions from the first trial the questions and answers showing the statement which the witness had denied. After such testimony had been introduced, the attorney for the defendant orally requested the court to direct the jury, specifically, "that this testimony read from the bill of exceptions of the former trial

shall not be considered by the jury as substantive evidence in this trial, and that it only goes to the credibility of the witness, Mr. Kuse, in this trial." At the proper time the defendant requested that six certain instructions be given by the court in this case, but did not request this one except by an oral motion at the time the evidence was introduced and before the testimony was concluded. While it is the duty of the trial court without a request and on its own motion to instruct the jury as to the general rules of law applicable to the issues of the case, it is also the rule that, if a party to a suit desires more specific instruction upon a point concerning one of the issues of the case, it is necessary for him to direct the attention of the trial court to the proposition by requesting such an instruction in writing. We have held: "If either party desires an instruction which would serve only to guide the jury in weighing certain features of the evidence in connection with the issues, he must request such specific instruction. The proper time to make the request is when the evidence is concluded, and the proper manner of making it is by submitting in writing the instruction desired." *Osborne v. State,* 115 Neb. 65. "Before error can be predicated upon the failure to charge the jury upon a given point, there must have been a request therefor, unless it is upon a question where a statute or positive rule of law requires the giving of such instruction." *Marshall v. State,* 116 Neb. 45, citing *Georgis v. State,* 110 Neb. 352. See, also, *Grosh v. State,* 118 Neb. 517, which cites *Osborne v. State, supra.* It therefore becomes evident that the defendant did not make a request for more specific instruction in this case at the proper time, nor in the proper manner, and therefore it was not error for the court to omit giving such instruction.

Conformable with the foregoing opinion, we find no prejudicial error in the record, and the judgment of the trial court is

AFFIRMED.