JOHN C. DICKSON *v.* YALE UNIVERSITY

SUPERIOR COURT          NEW HAVEN COUNTY          FILE No. 74020

Memorandum filed March 5, 1953.

*Curtiss Thompson,* of New Haven, for the Plaintiff.

*Gumbart, Corbin, Tyler* and *Cooper,* of New Haven, for the Defendant.

CULLINAN, J. Mr. Dickson, a returning Yale alumnus, received serious and permanent injury while attending the fifteenth reunion of his 1934 class. He has had a $14,000 verdict predicated on the alleged negligence of Yale in the construction, use and maintenance of one of its dormitories, Pierson College, which was made available by the university for the housing and convenience of members of the class of '34.

The defendant has filed an alternative motion, seeking judgment notwithstanding the verdict or that the verdict be set aside, a principal contention being that there was no evidence from which the jury could have found Yale negligent, or, if they did so find, that such negligence was the proximate cause of the plaintiff's injuries.

Mr. Dickson arrived in New Haven shortly before noon on Saturday, June 18, 1949, accompanied by a classmate, DeWitt Barlow, whereupon the two men reported to reunion headquarters and were assigned a double room on the fourth and top floor of Pierson College. They reached their room just after noon on an uncomfortably warm clear day to find the quarters stifling, requiring them to open windows as well as the door of an emergency exit which led from the room to an adjoining roof or balcony.

The reunion headquarters, a fraternity house, housed a bar which was in full operation serving cocktails and mixed drinks, in addition to which beer flowed freely and without additional cost to returning alumni. Dickson and Barlow, after having had a highball at Pierson College, returned to headquarters for luncheon. Thereafter they motored to Wallingford to visit the family of another classmate and, in the course of the drive back to New Haven, stopped at a tavern where each consumed at least two glasses of beer. Having reached New Haven at about 4:30 p.m., the men went to headquarters and socialized until approximately 6 p.m., during which time each had "some beer," "two bottles perhaps."

Dickson and Barlow then went to their Pierson College room to prepare for a 7 o'clock dinner and each consumed a highball while dressing. Upon returning to headquarters, Dickson took his place at table and says that from that point until he regained consciousness in the hospital, many, many hours later, he has no memory for the evening's events.

Barlow, on the other hand, testified that after the dinner he and Dickson and a large group of classmates sat on the steps of the fraternity house, sang, chatted and drank an undetermined number of glasses of beer until about 1:30 Sunday morning when he and Dickson returned to their room to rest.

He says that Dickson was clear, rational, perfectly normal, and that they engaged in conversation as they strolled from headquarters to Pierson College. The men went to bed at approximately 2 a.m., when Barlow fell asleep promptly.

At this point the continuity of the story is broken since Barlow was asleep and since Dickson's movements are completely obscured by his inability to recall anything that occurred after he sat down to dinner at 7 p.m. It is known, however, that Dickson's body was found lying on the ground outside Pierson College at about 3 a.m. And it is equally obvious that he fell or stumbled or plunged or jumped from the balcony which adjoined the sleeping room, since another classmate, who was sitting at the window of a ground-floor room, saw Dickson's body hurtling through the air from the general direction of that balcony.

What happened to Dickson between 2 and 3 a.m. is a complete mystery. All that is certain is that he went to bed; that, according to Barlow, he was then normal and rational; and that, at the expiration of an approximate hour, he was lying on the ground with grievous pelvic and facial injuries and numerous fractures of bodily bones. He was removed to Grace-New Haven Hospital, where two admission notes, one by an intern and the other by an assistant resident surgeon, describe his condition as one of "acute alcoholism," with a later note detailing nausea with a heavy odor of alcohol.

Yale University argues convincingly that even assuming every act of negligence as alleged, all of which are denied, there has been no showing that that negligence proximately caused the tragic result. It is impossible, says Yale, to tell who or what caused Dickson's injuries and thus a jury must have indulged in gross and wild speculation in an effort to reach a plaintiff's verdict.

A careful review of the evidence sustains Yale's position as a matter of law because there is no way of knowing whether Dickson, in a moment of exuberance, wandered on to the balcony and toppled off; whether Dickson, in a moment of depression, walked to the balcony and plunged off; or whether Dickson, in an effort to get air, found his way to the balcony and then fell asleep and fell to the ground. Surely there is nothing in the record to support the material allegation of paragraph 10 of the second substituted second count of complaint that "the plaintiff ... was walking on the balcony or roof adjoining said room when he lost his balance and fell off the easterly side thereof and landed on the ground below in the courtyard of said Pierson College."

It is apparent that the jury became confused by the legal significance of the presumption of due care and substituted the presumption for an essential finding of proximate cause. "The presumption created in the statute [§ 7836] does not affect the obligation of a plaintiff in an action of negligence to sustain the burden of establishing negligence on the defendant's part and that the conduct complained of was a proximate cause of the injury. . . ." *LeBlanc v. Grillo,* 129 Conn. 378, 385.

Negligence must be the proximate cause of an injury; causal connection is not to be based on mere conjecture but on reasonable probabilities. *Donovan v. Connecticut Co.,* 84 Conn. 531; *Brown v. Page,* 98 Conn. 141; *Genishevsky v. Fishbone,* 109 Conn. 58; *Richardson v. Pratt & Whitney Mfg. Co.,* 129 Conn. 669, 672.

The plaintiff points to the cases of *Esserman v. Madden,* 123 Conn. 386, *White v. Herbst,* 128 Conn. 659, and *Fandiller v. Peluso,* 139 Conn. 225, suggesting that the jury, in this matter of proximate cause, was entitled to draw reasonable and logical inferences from facts existing prior to or subsequent to

the event for the purpose of reaching a conclusion of fact. Analysis of those cases, however, indicates that in each, unlike the instant matter, a solid and sufficient foundation has been laid for the drawing of reasonable inferences.

In the view which I take of the matter, requiring the verdict be set aside, it becomes unnecessary to discuss claimed errors in the charge or rulings on evidence. It is conceivable that a retrial of this matter, with the possible introduction of further evidence on the subject of proximate cause and on the subject of Dickson's movements between 2 and 3 a.m., may bridge what I consider a presently fatal gap in proof. For this reason I am declining to enter a defendant's judgment notwithstanding the verdict.

The motion to set aside the verdict is granted.