THOMAS M. OLSEN *vs.* NEW ENGLAND FUEL AND TRANSPORTATION COMPANY.

Suffolk.    December 3, 1924. — February 25, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Negligence*, Defect in boiler valve.  *Evidence*, Opinion: expert; Presumptions and burden of proof; Competency; Matter of conjecture.  *Practice, Civil,* Conduct of trial, Verdict.

At the trial of an action against a corporation for personal injuries, received by the plaintiff while at work on a steamship of the defendant and in the employ of a third person, and caused by the explosion of an auxiliary stop valve of a boiler, the plaintiff asked of a witness, offered by him as an expert, whether, from an inspection of the valve whose breaking caused the injury, he was able to state what would have been an adequate cause for breaking out the piece then missing.  The defendant objected on the ground of lack of qualification of the witness. The witness testified that he was a machinist and steam engineer who, for the eighteen years preceding, had worked repairing marine engines and boilers and building boilers and who for nine years before that had been at sea as an engineer; that while he never had known a valve exactly like the one before him to break, he had known of the breaking of a similar valve; that he knew something of castings and of cast iron, although he never had made a study of them and did not know all about what defects came in castings and why.  The judge ruled that the witness was qualified to testify.  *Held*, that the finding by the judge on the qualification of the witness could not be said to have been wrong.

The defendant made no objection and saved no exception to questions asked of the witness above described after his qualification had been determined by the judge; and in answer to such questions he stated what he thought was an adequate cause for the breaking of the valve. *Held,* that, if the defendant was dissatisfied with the witness' qualification to answer further questions, it should have objected and obtained rulings on the sufficiency of his expert knowledge in regard to the matters then inquired about.

The testimony of the expert witness above described was to the effect that the break in the valve might have resulted from a hammering caused by condensation in the steam pipe which brought a sudden and

unusual strain upon the casting at a time when it was under an undue strain due to being screwed down improperly in closing it. There was no evidence that the valve had been screwed down too tightly. There was no evidence of a defect in the valve or of lack of proper inspection, and other equally probable explanations of the break were given in evidence. *Held,* that a verdict for the defendant should have been ordered.

Where, in an action of tort for personal injuries received in an accident when the plaintiff, in the employ of a third person, was at work upon a steamship of the defendant, it appears that the accident arose from the lawful operation by lawful means of an authorized instrumentality, and where any damage or injury that resulted might have come without any negligence of the defendant and merely as an unavoidable accident from the careful and skilful exercise by the defendant of his lawful rights and in spite of the observance of all proper precautions, no liability can arise without some affirmative evidence of negligence.

Tort for personal injuries received by the plaintiff while in the employ of P. S. Thorsen Company and at work patching the covering on the head of the forward starboard boiler of the defendant's steamship "Everett" and caused by the explosion of the auxiliary stop valve on that boiler. Writ dated January 3, 1922.

In the Superior Court, the action was tried before *Cox*, J. After the qualifying questions asked of the witness Stromberg, described in the opinion, he was asked the following questions and gave the following answers, without exceptions being saved by the defendant:

Q. "I will just ask whether you can state whether you know what would be an adequate cause?" A. "Yes, sir."

Q. "What would you say was an adequate cause for it?" A. "Overloading the top of the seat, setting down on that wheel in order to keep that valve from leaking, and also expansion and contraction." Asked what he meant by overloading the top of the seat, he answered: "With a big leverage here on that screw, if you have a big leverage enough you can screw the bottom off altogether. But they haven't done that. That causes a strain on that valve right here and it shows a strain here on this bottom. Of course, there would be probably a crack, and then water has been condensed in that pipe, and some jar comes in it, and that causes the break, — in my estimation. Of course, nobody can tell."

Q. "That is, a pressure operating both ways?" A. "Yes.

Here is the screw.   And there is where it pushes.   So that there is a strain from there to there.   And of course, if that stands awhile, with steam from another boiler in this way, and it condenses, and sometimes you get a bang, and that causes a break.   And there is no one can say, I don't think, how it broke."

Other material evidence is described in the opinion.   By agreement of the parties, the defendant's counsel explained to the jury that the only boiler in commission on the morning in question was the after port boiler.   "There was steam in that, but only for the purpose of furnishing what is called the auxiliary service, that is, to make the donkey engine run . . .  Now the pipe lines that carried the steam for that auxiliary service were at the top of the boiler; and as the steam was generated in this after port boiler, it passed out to the port, to the left, to go to the donkey engine.   Now there was a similar pipe from these other boilers, so that steam could be created in them and sent out to the donkey engine into the auxiliary service.   But when only one of the boilers was in operation, it was necessary to shut off the other boilers, so that the steam that was created would not run down into the other boilers.   And that was the purpose of these auxiliary stop valves.   They were closed. . . .  They were closed, so that the steam was raised in this after port boiler, as it filled the pipe lines, wouldn't run down into that boiler or into that boiler.   It just filled those pipes, and, when they were filled, the steam passed out into the donkey engine and operated that.   That was why this valve on the starboard forward boiler was closed, so that the steam wouldn't run down into that boiler."

At the close of the evidence, the defendant asked for the following rulings:

"1. On all the evidence the plaintiff is not entitled to recover.

"2. Where the accident may have arisen without any negligence on the part of the defendant, there can be no liability on the part of the defendant without some affirmative evidence of negligence.

"3. It appearing from the plaintiff's evidence that the

accident might have resulted from a hidden defect in the valve without any negligence on the part of the defendant, there can be no liability on the part of the defendant."

The record stated that the trial judge refused to give the first and third rulings, but did not state what disposition was made of the second. The record further stated that the judge "submitted the case to the jury and upon instructions not objected to the jury returned a verdict for the plaintiff."

The verdict for the plaintiff was in the sum of $1,500. The defendant alleged exceptions.

*G. P. Wardner*, for the defendant.

*W. R. Bigelow*, for the plaintiff.

WAIT, J. The bill of exceptions presents two questions: Was the testimony of Stromberg properly admitted? and: Was there evidence of negligence sufficient to entitle the plaintiff to go to the jury?

The exception to the admission of the evidence must be overruled. Stromberg was asked whether, from an inspection of the valve whose breaking caused the injury, he was able to state what would have been an adequate cause for breaking out the piece then missing. This was a proper subject for expert testimony. The witness was a machinist and steam engineer who, for the eighteen years preceding, had worked repairing marine engines and boilers and building boilers and who for nine years before that had been at sea as an engineer. He had never known a valve exactly like the one before him to break, but had known of the breaking of a similar valve. He knew something of castings and of cast iron, but never had made a study of them and did not know all about what defects came in castings and why. Obviously he was qualified to answer the question put to him. His experience enabled him to give evidence of value; even if it was not so universally comprehensive that it covered all possible matters involved in the breaking of a valve. No objection was made to further questions. If the defendant was dissatisfied with his qualification to answer them, it should have objected and obtained rulings on the sufficiency of his expert knowledge in regard to the matters then inquired about. As was said, with abundant citation

of authority, in *Johnson* v. *Lowell*, 240 Mass. 546, 549: "It is settled that whether a witness offered as an expert is qualified to give an opinion, rests very largely in the discretion of the presiding judge whose decision will not be reversed unless clearly erroneous as matter of law." No clear error of law appears.

The evidence, taken most strongly for the plaintiff, shows that the valve broke in the castiron casting, and that no one could be certain just what caused the break. The valve was of standard make, and had been in use since 1908, under a usual pressure while the vessel was at sea of 180 pounds per square inch. It had been closed for the two days before the accident and was under a pressure of about 120 pounds, which was the pressure at the time it gave way. There was no evidence of the lifetime of such a valve. It had been inspected yearly, the last inspection in the July preceding the December of the accident, and when inspected had been found in good condition. There was no evidence of any old crack. It was necessary to take the valve apart in order to inspect the region of the break. There was no evidence to show that it was usual to take such valves down oftener than once a year. There was no evidence that it had leaked or shown any defect in service. The opinion of Stromberg was the only testimony that the break might have resulted from a hammering caused by condensation in the steam pipe which brought a sudden and unusual strain upon the casting at a time when it was under an undue strain due to being screwed down improperly in closing it. Equally probable explanations were shown. There was no evidence that, in fact, the valve had been screwed down too tightly. We disregard the evidence that the spindle would have broken or stripped or the disk would have given way before the casting would yield had too great pressure been used in screwing down the valve; because, theoretically, the jury might have disbelieved it.

We think the evidence leaves wholly to speculation or conjecture whether the defendant was negligent. It does not present facts which show negligence. It is fully as consistent with the absence as with the presence of careless-

ness.   In such a case it is the court's duty to direct a verdict for the defendant.   *Doyle* v. *Boston & Albany Railroad,* 145 Mass. 386.   In *Griffin* v. *Boston & Albany Railroad,* 148 Mass. 143, *Mooney* v. *Connecticut River Lumber Co.* 154 Mass. 407, *Lowner* v. *New York, New Haven & Hartford Railroad,* 175 Mass. 166, *Melvin* v. *Pennsylvania Steel Co.* 180 Mass. 196, and *Heuser* v. *Tileston & Hollingsworth Co.* 230 Mass. 299, there were facts furnishing far more basis for trustworthy inference than are presented here.   *Beattie* v. *Boston Elevated Railway,* 201 Mass. 3, perhaps comes as near this case on its facts as any other, but in that case there was testimony that only through defects in the condition of the electric mechanism and equipment of the car (matters which could have been observed readily on inspection) could the explosion have occurred.

The case falls within the line of decision illustrated by *Clare* v. *New York & New England Railroad,* 167 Mass. 39, *Wadsworth* v. *Boston Elevated Railway,* 182 Mass. 572, *Sheehan* v. *Goodrich,* 207 Mass. 99, *Ridge* v. *Boston Elevated Railway,* 213 Mass. 460, *Kusick* v. *Thorndike & Hix, Inc.* 224 Mass. 413, *Hanna* v. *Shaw,* 244 Mass. 57, and within the principle stated by Sheldon, J. in *Carney* v. *Boston Elevated Railway,* 212 Mass. 179, 180: "Where as here the cause of the accident has come from the lawful operation by lawful means of an authorized instrumentality, and where any damage or injury that has resulted may have come without any negligence of the defendant, but may have arisen merely as an unavoidable accident from the careful and skilful exercise of its lawful rights in spite of the observance of all proper precautions, there no liability can arise without some affirmative evidence of negligence."

The defendant's motion for a directed verdict should have been allowed.   We need not consider the exceptions to the refusal of its requests for rulings.

The exception to the admission of evidence is overruled. The exception to the refusal to direct a verdict for the defendant is sustained.

*So ordered.*